**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re:  COX ENTERPRISES, INC. SET-TOP CABLE TELEVISION BOX ANTITRUST LITIGATION.

------------------------------

RICHARD HEALY,

    Plaintiff - Appellee,

v.

COX COMMUNICATIONS, INC.,

    Defendant - Appellant.

No. 14-6158

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:12-ML-02048-C)**
_____

Margaret M. Zwisler, Latham & Watkins LLP, Washington, D.C. (Jennifer L. Giordano, Latham & Watkins, Washington, D.C.; D. Kent Meyers, Crowe & Dunlevy, Oklahoma City, Oklahoma; Alfred C. Pfeiffer, Jr., Latham & Watkins LLP, San Francisco, California; and Robert G. Kidwell, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo P.C., Washington, D.C., with her on the briefs), for Defendant-Appellant.

Todd M. Schneider, Schneider Wallace Cottrell Brayton & Konecky, LLP, San Francisco, California (Rachel Lawrence Mor, Rachel Lawrence Mor, P.C., Oklahoma City, Oklahoma; Michael J. Blaschke, Michael J. Blaschke, P.C., Oklahoma City, Oklahoma; S. Randall Sullivan, Randall Sullivan, P.C., Oklahoma City, Oklahoma; A. Daniel Woska, Woska, Hasbrook & Dowd, Oklahoma City, Oklahoma; Allan Kanner and Cynthia St. Amant, Kanner & Whiteley, LLC, New Orleans, Louisiana; Jason Kim, Schneider Wallace Cottrell Brayton & Konecky, LLP, San Francisco, California; Garrett W. Wotkyns, Schneider Wallace Cottrell Brayton & Konecky, LLP, Scottsdale, Arizona,

Joe R. Whatley, Jr., Whatley Drake & Kallas, LLC, New York, New York; W. Tucker Brown, Whatley Kallas, LLP, Birmingham, Alabama; and Henry C. Quillen, Whatley Kallas, LLP, Portsmouth, New Hampshire, with him on the brief) for Plaintiff-Appellee.

_____

Before **LUCERO**, **MURPHY**, and **McHUGH**, Circuit Judges.

_____

**LUCERO**, Circuit Judge.

_____

Cox Enterprises ("Cox") is currently the defendant in a class-action antitrust suit. Shortly before trial was set to begin—and after extensive discovery, class certification, potentially dispositive motions, and a petition to this circuit—Cox moved to compel arbitration. The district court determined that Cox's assertion of its right to arbitrate was overly late and inconsistent with its conduct in litigating the case, and thus held that Cox waived its right to compel arbitration.

Our circuit has a well-established procedure for determining whether a party has waived its right to compel arbitration. Under our precedent in Peterson v. Shearson/Am. Express, Inc., 849 F.2d 464 (10th Cir. 1988), we consider six factors. Applying the Peterson factors, we conclude that Cox did waive its right to compel arbitration. Accordingly, exercising jurisdiction over this appeal from an interlocutory order under 9 U.S.C. § 16(a)(1), we affirm the decision of the district court.

**I**

This case stems from class-action litigation against Cox by subscribers to its cable service. In 2009, subscribers in several jurisdictions filed actions against Cox

alleging that the company illegally tied its premium cable service to rental of a Cox set-top box.[1] These actions were consolidated as a multidistrict litigation and transferred to the U.S. District Court for the Western District of Oklahoma. Cox then moved to dismiss. During the pendency of its motion, Cox began inserting mandatory arbitration clauses into the contracts of some customers, including putative class members. One such clause reads as follows:

> Except as otherwise prohibited by law, you and Cox agree to arbitrate— rather than litigate in court—any and all claims or disputes between us that arise out of or in any way relate to: (1) this Agreement; (2) services that Cox provides to you in connection with this Agreement; (3) products that Cox provides to you under this Agreement; and (4) bills that Cox sends to you or amounts that Cox charges you for services or goods provided under this agreement.

There is no record evidence that Cox notified the district court about its insertion of these clauses. Cox also added arbitration clauses to contracts for high-speed Internet service. These clauses purported to cover all Cox services, including the cable service involved in the tying dispute, and read: "You and Cox agree that all claims or disputes between you and Cox will be arbitrated individually, and that there will be no class, representative, or consolidated actions in arbitration."

Ultimately, plaintiffs' attempt to certify a nationwide class failed. They instead sought to certify several classes for specific geographic regions, and the actions were again consolidated and transferred to the Western District of Oklahoma.

---

[1] The resolution of this appeal was unnecessarily stymied by both parties' violation of Tenth Circuit Rule 28.1(A), which requires references to the appendix. Citing the district court docket is not an appropriate substitute for providing an adequate appendix. See Fulghum v. Embarq Corp., 785 F.3d 395, 404 n.5 (10th Cir. 2015).

The case at bar was originally brought in the Western District of Oklahoma in April 2012 on behalf of certain individuals who "reside in Cox's Oklahoma City market." In September 2012, Cox moved unsuccessfully to dismiss the case for failure to state a claim. Cox did not mention the arbitration agreements in that motion. After the motion to dismiss was denied, the parties agreed to stay the other cases, proceed with discovery in only two of those cases, and use the Oklahoma case as a bellwether.

The parties then engaged in extensive pretrial discovery, issuing interrogatories, submitting declarations, exchanging tens of thousands of documents, locating and hiring experts, and deposing witnesses. In September 2013, named plaintiff Healy moved to certify a class. Cox opposed the motion and moved to exclude the testimony of Healy's experts in support of the motion. Nowhere in its answer did Cox inform the district court of its arbitration agreements or raise the presence of these agreements as an impediment to the alleged numerosity, typicality, and commonality of the class.

During the pendency of the motion for class certification, the parties continued to engage in discovery. Cox also filed a surreply in opposition to the motion for certification, which again did not mention the arbitration provisions. In January 2014, in an order that extensively addressed Cox's arguments relating to the requirements for certification, the court granted class certification. Cox moved for reconsideration on several grounds, but the impact of the arbitration clauses was not among them. That motion was denied. See In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig., No. 14-601, slip op. at 2 (10th Cir. Mar. 10, 2014)

(unpublished) ("Cox I"). In March 2014, Cox sought permission from this court to appeal the certification decision, arguing that the district court erred in analyzing the Federal Rule of Civil Procedure 23 factors. It did not mention arbitration in that petition, which was denied. See id. In April 2014—two years into the litigation—Cox moved to compel arbitration. That same day, it also moved for summary judgment. In its original motion to compel, Cox suggested that it sought to compel arbitration against both the absent class and named plaintiff Healy, and attached his arbitration agreement to the motion. It was not until its reply brief that Cox firmly clarified that it was not seeking to arbitrate Healy's claims.

The district court denied the motion to compel arbitration on the basis that Cox's prior conduct in this litigation constituted waiver. Cox now appeals the district court's denial of its motion to compel.

## II

It is axiomatic that "the right to arbitration, like any other contract right, can be waived." Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo., 614 F.2d 698, 702 (10th Cir. 1980). We review de novo a district court's determination that the right to compel arbitration has been waived. 1mage Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1055 (10th Cir. 2006). However, we review the findings of fact on which the district court based its decision for clear error. MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc., 886 F.2d 1249, 1259 (10th Cir. 1989). "The findings of the trial court on the defendants'

-5-

conduct must be accepted unless they are clearly erroneous." Reid Burton, 614 F.2d at 703.

Under the Federal Arbitration Act ("FAA"), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As such, the FAA "strongly favors enforcement of agreements to arbitrate." Hill v. Ricoh Ams. Corp., 603 F.3d 766, 777 (10th Cir. 2010). Were we to have any "doubts concerning the scope of arbitrable issues," we should resolve them "in favor of arbitration." Nat'l Am. Ins. Co. v. SCOR Reinsurance Co., 362 F.3d 1288, 1290 (10th Cir. 2004) (quotation omitted). This is true "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983).

Our circuit has established a six-factor test to determine if the right to arbitrate has been waived. Peterson, 849 F.2d at 467-68. We consider:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

Id. at 467-68 (quotations omitted). Applying this six-factor test, the district court concluded that Cox, through its actions and omissions, waived its right to compel arbitration.

In employing the Peterson factors, we do not apply a "mechanical process in which each factor is assessed and the side with the greater number of favorable factors prevails." Hill, 603 F.3d at 773. "Rather, these factors reflect certain principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration." Id. Importantly, it is well settled that a party "may not play fast and loose with the judicial machinery and deceive the courts," Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974), and "[a]n important consideration in assessing waiver is whether the party now seeking arbitration is improperly manipulating the judicial process," Hill, 603 F.3d at 773.

The district court found that Cox's failure to inform it about the presence of the arbitration agreements until after certification was inconsistent with an intent to arbitrate and suggested "an attempt to manipulate the process, or at least to attempt multiple bites at the apple." In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig., No. 12-MDL-2048-C, 2014 WL 3567629, at *3 (W.D. Okla. July 18, 2014) (unpublished) ("Cox II"). One of Cox's arbitration agreements would subject as many as 87% of the class members to arbitration. This fact, the district court concluded, "would have a significant impact on the issue of numerosity when evaluating the propriety of certifying a class." Id. at *4. Nevertheless, Cox withheld

-7-

information about those agreements until after the court had completed its numerosity analysis. This action contrasted with Cox's "handling of another issue that impacted persons not yet members of the class"—its argument that the claims of certain absent members might be barred due to the "filed rate doctrine." Id. at *3. As the district court concluded, "had Defendant intended to be prompt in its demand for arbitration it could have made a similar argument," demonstrating that Cox acted in a manner inconsistent with the intent to arbitrate. Id. We agree with this conclusion. Cox's complete failure to mention the presence of its arbitration contracts, despite the obvious impact that they would have on the court's Rule 23 analysis, is clearly inconsistent with an intent to arbitrate.

Moreover, rather than requesting that its motion for summary judgment be stayed until its motion to compel was decided, Cox moved to compel arbitration on the same day it moved for summary judgment, even though it was aware that arbitration could have been raised earlier. Cf. Hurley v. Deutsche Bank Trust Co. Ams., 610 F.3d 334, 339 (6th Cir. 2010) (noting that defendants waive their "right to arbitrate by failing to assert that right in a timely fashion and instead participating in litigation-related activities," in particular motions for summary judgment); St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., 969 F.2d 585, 589 (7th Cir. 1992) ("A party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum."). This was only one of Cox's many attempts, detailed by the district court, to "[c]learly . . . play heads I win, tails you lose" by manipulating the litigation machinery and

-8-

omitting known material facts about the absent class members from its briefing. Cox II, 2014 WL 3567629, at *3 (quotation omitted). The district court noted that "it can be assumed that" these tactics, if successful, would have been used by Cox in an attempt to bar any request for arbitration. Id.

The second, third, and fifth Peterson factors also cut strongly against Cox. As the district court concluded, the litigation machinery had been substantially invoked and the parties were well into preparation of the lawsuit before Cox notified Healy of its intent to arbitrate. It explained that "[s]ince consolidation, the Court has read literally thousands of pages of briefs, conducted several hearings, including a class certification hearing, and issued dozens of Orders, including rulings on Motions to Dismiss, Daubert Motions, Class Certification, and recently a Motion for Summary Judgment." Cox II, 2014 WL 3567629, at *1. Moreover, Cox attempted to appeal the district court's certification decision to this court while remaining silent on a key factor that would have significantly affected the district court's Rule 23 analysis and our review of that analysis. Cox delayed in mentioning its intent to arbitrate for a substantial period of time, and ultimately moved to compel arbitration close to trial. See MidAmerica, 886 F.2d at 1261 (upholding a waiver finding in part on the basis that the party found to have waived its right to arbitrate "sought arbitration after a delay of more than twenty months and did not seek a stay at any time during that period"); see also Johnson Assocs. Corp. v. HL Operating Corp., 680 F.3d 713, 718 (6th Cir. 2012) (finding that a delay of eight months supported waiver). We have previously concluded that parties waived their right to compel arbitration when they

-9-

failed to mention their intention to arbitrate until shortly before trial. In <u>Reid Burton</u>, we held that the defendants waived their right to arbitration when they initially raised the issue of arbitration in their answer as a bar to the plaintiff's claim, but did not attempt to compel arbitration until shortly before trial. 614 F.2d at 699-700, 703. In <u>Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 39 F.3d 1482 (10th Cir. 1994), we held that defendants waived the right to seek arbitration when they waited for four months before advancing their arbitration claim. <u>Id.</u> at 1488-90. However, we have also held that waiver does not occur, even if defendants do not promptly raise the arbitration issue, when little occurred in the intervening time between the initial complaint and the arbitration demand. <u>Hill</u>, 603 F.3d at 775.

Regarding the fifth <u>Peterson</u> factor, the district court explained that "the parties have made ample use of every discovery device available and Defendant's actions in this regard are incompatible with the use of arbitration, where discovery is more limited." <u>Cox II</u>, 2014 WL 3567629, at \*2. We see nothing in the record that would cause us to disagree with this conclusion.

Healy certainly suffered prejudice from Cox's delays and omissions. Both parties conducted extensive discovery, at great expense, with an eye toward establishing an ascertainable class as required by Rule 23. Now, after briefing and discovery is complete and after Cox lost on the merits, it seeks to remove up to 87% of the class, which the district court indicated would "have a significant impact on the issue of numerosity when evaluating the propriety of certifying a class." <u>Id.</u> at \*4. Cox is essentially asking for a redo of the Rule 23 analysis based upon

information it knowingly withheld from the district court, and such a redo would surely impose costs on Healy—costs that would have been entirely preventable had Cox informed the court about the presence of the agreements in the first instance. As the Second Circuit has explained, "[p]rejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991).

Perhaps the greater prejudice from Cox's actions, however, flows to the court and the integrity of the judicial process. As discussed supra, the district court engaged in extensive Rule 23 analysis, resolved numerous motions, and adjudicated discovery disputes. It invested a copious amount of judicial resources in this analysis at great expense to the public. Moreover, this court has expended significant time and energy reviewing Cox's previous attempt to decertify the class—in which, again, Cox failed to mention a known material factor in the Rule 23 analysis. The FAA was enacted in large part to facilitate "streamlined proceedings and expeditious results." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1749 (2011) (quotations omitted). Nothing in the FAA requires a district court to idly stand by while a party misleads that court through its material omissions and delays and needlessly extends the litigation process through a willful attempt to play "hide the ball." As the Fourth Circuit long ago explained, "[a]rbitration laws are passed to expedite and facilitate the settlement of disputes and avoid the delay caused by litigation. It was never intended that these laws should be used as a means of furthering and extending delays." Radiator Specialty Co. v. Cannon Mills, 97 F.2d 318, 319 (4th Cir. 1938).

-11-

On appeal, Cox contends that the <u>Peterson</u> analysis is inapposite because a party does not invariably waive its right to compel arbitration against absent class members by filing its motion to compel after the class has been certified. Cox explains that it would have been futile to file a motion to compel against absent class members before the class had been certified because those individuals were not parties. A variety of authorities—though none binding on us—are marshalled in support of this contention. <u>See, e.g.</u>, <u>In re TFT-LCD (Flat Panel) Antitrust Litig.</u>, No. M 07-1827 SI, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) (unpublished) (holding that, although the issue was "extremely close," defendants who waited to raise arbitration against absent class members until after certification did not waive their right to arbitrate). Cox argues that waiver is defined as the intentional relinquishment of a known right and that, as a matter of law, its right to arbitrate against the class members could not have become known until the class was certified.

The district court correctly rejected this argument as an improper attempt to artificially narrow the scope of waiver. As a preliminary matter, our circuit has explicitly rejected the proposition that waiver in the context of contract enforcement, including arbitration contracts, is limited to "the narrow sense of waiver typically used in the criminal-law context, where a waiver is an intentional relinquishment or abandonment of a known right." <u>Hill</u>, 603 F.3d at 773 (quotation omitted).

Moreover, it is undisputed that Cox knew about the existence of the arbitration clauses when it engaged in extensive discovery and opposed the Rule 23 motion. It is also undisputed that Cox could have asserted its right to arbitrate against Healy at any time during the course of the litigation, and that it could have asserted its right to arbitrate against the absent class members as a possible defense against class certification. The court may not have been able to <u>compel</u> arbitration of absent class members at that time, but Cox's <u>assertion</u> or mention of its right at that point would have fundamentally changed the course of the litigation, ensured a more expedient and efficient resolution of the trial, and prevented Cox's improper gamesmanship. Other courts have agreed. <u>See</u> <u>Edwards v. First Am. Corp.</u>, 289 F.R.D. 296, 307 (C.D. Cal. 2012) (explaining that parties may waive their right to arbitrate against absent class members when they could have "asserted their intention to raise arbitration as a defense at a much earlier stage in the proceeding"); <u>see also</u> <u>Elliott v. KB Home N.C., Inc.</u>, 752 S.E.2d 694, 702 (N.C. Ct. App. 2013), <u>appeal dismissed</u>, 759 S.E.2d 98 (N.C. 2014), <u>cert. denied sub nom.</u> <u>KB Home Raleigh-Durham, Inc. v. Elliott</u>, 135 S. Ct. 494 (2014) (explaining that the right to arbitrate against absent class members can be waived when a party knowingly fails to assert or raise that right as a defense to certification); <u>cf.</u> <u>In re Citigroup, Inc.</u>, 376 F.3d 23, 29 (1st Cir. 2004) (finding a party's having "vigorously opposed class certification" relevant in determining that the party had waived its right to arbitrate against class members).

Even under Cox's excessively narrow definition of waiver, it could have moved to compel arbitration after the district court certified the class in the first instance, yet it continued to litigate the case by filing a motion for reconsideration, continuing to participate in discovery, petitioning this court for leave to appeal the certification decision, and filing a motion for summary judgment. We agree with the Eighth Circuit that "a party must do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC, 588 F.3d 963, 969 (8th Cir. 2009) (quotations omitted). Notably, Cox filed a motion for summary judgment simultaneously with its motion to compel, resulting in the dismissal of claims against all class members whose set-top boxes were governed by a filed rate before the motion to compel was resolved. That action could have, on its own, supported a finding of waiver. See Khan v. Parsons Global Servs., Ltd., 521 F.3d 421, 427-28 (D.C. Cir. 2008) (explaining that "a defendant who seeks arbitration only as an alternative to summary judgment 'takes the risk' that the court will rule on the merits of the plaintiff's claims, thereby precluding the defendant from seeking arbitration subsequently"). All of these actions evince that Cox improperly sat on its right to arbitrate, even when that right was unambiguously available. See Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995) (disapproving of parties who "play heads I win, tails you lose" by waiting to "see how the case was going in federal district court before deciding whether it would be better off there or in arbitration").

-14-

Of course, the district court did not ground its decision in Cox's failure to compel arbitration at an earlier point. Rather, its decision was motivated by the specifics of Cox's conduct and its failure to mention its intent to raise its arbitration rights as a defense or inform the district court of the existence of those rights. As the district court observed, "[w]hether or not the Court could have compelled a non-class member to arbitrate, failure to raise the issue can result in waiver. It is Defendant's inconsistent conduct and extreme delay that warrants waiver in this case." Cox II, 2014 WL 3567629, at *3; cf. Edwards, 289 F.R.D. at 307 (holding that defendants who waited to even mention arbitration until after a class was certified had waived their right to arbitrate because they "could have asserted their intention to raise arbitration as a defense at a much earlier stage in the proceeding," even though the court could not have compelled arbitration). [2]

---

[2] Earlier this year, the Eleventh Circuit decided In re Checking Account Overdraft Litig., 780 F.3d 1031 (11th Cir. 2015). In a letter filed on June 12, 2015 pursuant to Fed. R. App. P. 28(j), Cox argues that Checking Account supports the proposition that it could not have moved to compel arbitration until after a class was certified.

We explain supra why the issue of when Cox could have moved to compel arbitration is not dispositive. Cox moved to compel arbitration after the class was certified and the district court rendered its decision at the proper stage of litigation. The actions taken by Cox after certification are independently sufficient for a finding of waiver. Cox's contention that it could not compel arbitration before certification also does not excuse its failure to raise or mention the arbitration clauses during the court's Rule 23 analysis. Cf. id. at 1039 n.10 (explaining that whether a defendant may compel unnamed putative class members to arbitrate is an issue "properly litigated via a motion to certify a class").

The actions of the Checking Account defendant, unlike those of Cox, do not evince an attempt to manipulate the judicial process. That defendant notified the court of the presence of the arbitration agreements prior to engaging in discovery and motions practice relating to class certification, and it raised the arbitration

-15-

# IV

We agree with the district court that, in light of the specific facts of Cox's conduct, allowing Cox to compel arbitration at this juncture would be inconsistent with governing precedent. Overturning the district court in this context would provide a license for parties to cynically game the federal courts and abuse the judicial process. Nothing in the FAA requires us to acquiesce to such behavior.

In reaching this decision, we consider only Cox's behavior toward the court and plaintiff in the context of the case at bar after it was filed in April 2012. We express no opinion on whether Cox's allegedly inequitable conduct with respect to the 2009 multidistrict litigation should be regarded as relevant to its waiver of the right to arbitrate in the instant case or any other. Similarly, we express no opinion as to whether Cox waived its right to arbitrate against absent class members in the other cases in this multi-district litigation. Cf. In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig., No. 12-ML-2048-C, 2014 WL 7338914, at *2 (W.D. Okla. Dec. 22, 2014) (distinguishing between Cox's actions in the case at bar and its actions in "secondary" cases).

---

agreements as a defense to numerosity in its motion to compel. Id. at 1035. The Checking Account court, in any event, did not decide whether the defendant may compel arbitration against the absent class members if a class is eventually certified. It held only that such a question was not justiciable until certification, and explained that a finding of waiver against the named plaintiff is not necessarily coterminous with a finding of waiver against the absent class members. Id. at 1038 n.9. Nothing in Checking Account conflicts with our holding in the case at bar.

-16-

Because we hold that Cox waived its right to compel arbitration, we need not resolve Healy's claims that the arbitration contracts were illusory or otherwise unenforceable.

**AFFIRMED**.  Healy's motion to expedite the decision is **DENIED** as moot.