No. 113,077

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PORTFOLIO RECOVERY ASSOCIATES, LLC,
*Appellant*,

v.

DANETTE R. DIXON, Individually and
on Behalf of All Others Similarly Situated,
*Appellees*.

SYLLABUS BY THE COURT

1.

Whether a party has waived its right to arbitration is a legal conclusion subject to plenary review.

2.

It is well established that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which that party has not agreed so to submit.

3.

The Federal Arbitration Act is the expression of the federal government's policy favoring arbitration agreements, and it places arbitration agreements on the same footing as other contracts in order to overturn the judiciary's longstanding refusal to enforce agreements to arbitrate. The Act applies when a case involves a written agreement and interstate commerce. All doubts about the scope of what issues are subject to arbitration should be resolved in favor of arbitration.

4.

The Federal Arbitration Act preempts state law concerning the enforcement of arbitration agreements involving interstate commerce.

5.

Courts presume that parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. These procedural matters include claims of waiver, delay, or a like defense to arbitrability.

6.

Before the Federal Arbitration Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated. It is a fundamental principle that arbitration is a matter of contract and not something to be foisted on the parties at all costs. The court may only compel arbitration of arbitrability if the parties agreed to arbitrate arbitrability.

7.

Disqualification of an attorney destroys an attorney-client relationship and deprives a party of representation of its own choosing and, therefore, should be reviewed with extreme caution. The decision to disqualify an attorney chosen by a party to represent him or her in a lawsuit is of serious concern, and the court's inherent power to do so should only be exercised where the integrity of the adversary process is threatened. Even then, the court should not act unless the offending attorney's conduct threatens to taint the underlying trial with a serious ethical violation.

Appeal from Rice District Court; RON SVATY, judge. Opinion filed January 29, 2016. Reversed and remanded with directions.

*Lora M. Jennings*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Overland Park, *Marcia A. Wood*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, and *Stephen R. Swofford*, of Hinshaw & Culbertson LLP, of Chicago, Illinois, for appellant.

*A.J. Stecklein*, of Consumer Legal Clinic LLC, of Kansas City, and *Keith J. Keogh* and *Michael S. Hilicki*, of Keogh Law Ltd., of Chicago, Illinois, for appellees.

Before POWELL, P.J., PIERRON and LEBEN, JJ.

POWELL, J.:  Portfolio Recovery Associates, LLC (PRA) filed a lawsuit against Danette R. Dixon for the recovery of unpaid credit card debt. Dixon filed an initial answer pro se denying any knowledge of the debt but subsequently hired counsel and filed an amended answer which included a class-action counterclaim. After more than 2 years, PRA eventually moved to compel arbitration of Dixon's counterclaim pursuant to the arbitration provision contained in the credit card agreement. The district court denied the motion, finding PRA had waived its right to arbitration by engaging in litigation. Simultaneously, the district court issued an order striking the appearances of two of PRA's attorneys, finding they had made a material misrepresentation of the law by erroneously citing a United States Supreme Court decision for quoted language that should have been attributed to a United States District Court opinion.

PRA appeals both rulings, contending the district court erred as a matter of law by not referring Dixon's counterclaim to arbitration and by dismissing two of its attorneys. Because we find that binding United States Supreme Court precedent requires arbitration of the question of whether PRA waived its right to arbitrate Dixon's counterclaim, assuming the arbitration provision in the credit card agreement is binding on the parties, and because we find that counsel for PRA did not make a material misrepresentation of the law to the district court, we reverse and remand.

3

FACTUAL AND PROCEDURAL BACKGROUND

Dixon opened a Capital One credit card on February 10, 2006. Her credit card agreement with Capital One contained an arbitration provision that provided in part:

"You and we agree that either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration.

. . . .

"'**Claim**' means any claim, controversy or dispute of any kind or nature between you and us.

"A. *This definition includes, without limitation, any Claim that in any way arises from or relates to*:

• the Agreement and any of its terms (including any prior agreements between you and us or between you and any other entity from which we acquired your account)

• this Arbitration Provision (including whether any Claim is subject to arbitration)

. . . .

"B. *This definition also includes, without limitation, any Claim*:

• regardless of how or when it is brought (for example, as an initial claim, counterclaim, cross-claim, interpleading or third-party claim)

• based on any theory of relief or damages (including money damages and any form of specific performance or injunctive, declaratory or other equitable relief)

• based on any theory of law or equity (including contract, tort, fraud, constitution, statute, regulation, ordinance or wrongful acts or omissions of any type, whether negligent, reckless or intentional)

• made by you or by anyone connected with you or claiming through or for you (including a co-applicant or authorized user of your account, your agent, your representative, your heirs or a trustee in bankruptcy)

• for which we may be directly or indirectly liable under any theory, including respondeat superior or agency (even if we are not properly named at the time the Claim is made)

4

- now in existence or that may arise in the future, regardless of when the facts and circumstances that give rise to the Claim occurred or when the Claim accrued

- made as part of a class action, private attorney general action, or other representative or collective action which Claim shall proceed on an individual basis as set forth more fully in this Arbitration Provision.

. . . .

"**Election and Initiation of Arbitration**. You or we may elect arbitration under this Arbitration Provision with respect to any Claim, even if the Claim is part of a lawsuit brought in court."

With specific regard to class action lawsuits, the arbitration provision stated:

"**No Consolidation or Joinder of Parties**. The arbitration of any Claim must proceed on an individual basis, even if the Claim has been asserted in a court as a class action, private attorney general action or other representative or collective action. Unless all parties consent, neither you nor we may join, consolidate or otherwise bring Claims related to two or more accounts, individuals or accountholders in the same arbitration. Also, unless all parties consent, neither you nor we may pursue a class action, private attorney general action or other representative or collective action in arbitration, nor may you or we pursue such actions in Court if any party has elected arbitration. You will not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim as to which arbitration has been elected."

Finally, the arbitration provision included a clause precluding waiver: "If you or we do not elect arbitration or otherwise enforce this Arbitration Provision in connection with any particular Claim, you or we will not waive any rights to require arbitration in connection with that or any other Claim."

Dixon made purchases with her Capital One credit card, allegedly did not pay for them, and eventually defaulted. Her account was apparently charged off, and Capital One subsequently sold Dixon's account to PRA.

On June 21, 2010, PRA filed a petition under Chapter 61 in the Rice County District Court seeking to recover credit card debt in the amount of $1,087.46. Dixon's original pro se answer asserted: "Debt unknown."

Dixon subsequently retained counsel and, on November 12, 2010, filed an amended answer and class-action counterclaim, seeking declaratory judgment, injunctive relief, damages, statutory damages, and attorney fees on the rationale that PRA was attempting to collect debts in Kansas without a proper license. On December 30, 2010, PRA answered the counterclaim and listed arbitration as one of its affirmative defenses but did not move to compel arbitration. Roughly a year later, on Dixon's motion, the case was redesignated as a Chapter 60 case.

On November 26, 2012, more than 2 years after Dixon filed her countersuit and following multiple rounds of contentious discovery, PRA filed a motion to compel arbitration and stay proceedings pending completion of arbitration. Dixon opposed the motion on the grounds that PRA had waived any alleged right to invoke arbitration by proceeding in court for years. At an initial hearing on PRA's motion to compel arbitration, the district court requested additional briefing on whether PRA's conduct effectively waived any alleged right to compel arbitration.

A second hearing was held on September 23, 2014, in which the district court found that PRA had waived its right to arbitrate and denied PRA's motion to compel arbitration. Contemporaneously, the district court entered a second order striking the appearance of two lawyers for PRA on the grounds that they had made a material misrepresentation of the law in PRA's supplemental brief. The district court based its finding on the fact that counsel for PRA incorrectly attributed a quote from a United States District Court for the District of Kansas case to a United States Supreme Court

case twice in its supplemental brief and once in its response to Dixon's supplemental brief.

PRA appeals the district court's denial of its motion to compel arbitration and the dismissal of its two attorneys.

### DID PRA WAIVE ITS RIGHT TO ARBITRATE DIXON'S COUNTERCLAIMS?

Whether a party has waived its right to arbitration is a legal conclusion subject to "'plenary'" review. *D.M. Ward Constr. Co. v. Electric Corp. of Kansas City*, 15 Kan. App. 2d 114, 119, 803 P.2d 593 (1990), *rev. denied* 248 Kan. 994 (1991). However, any factual findings upon which such a conclusion is based are subject to the clearly erroneous standard of review. 15 Kan. App. 2d at 119.

It is well established that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [that party] has not agreed so to submit." *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960). The Federal Arbitration Act (FAA) is the expression of the federal government's policy favoring arbitration agreements, and it places arbitration agreements "'upon the same footing as other contracts [in order] to overturn the judiciary's longstanding refusal to enforce agreements to arbitrate.'" *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 771 (10th Cir. 2010) (quoting *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 451 [4th Cir. 1997]). In fact, this court has recognized that the FAA preempts state law concerning the enforcement of arbitration agreements involving interstate commerce. See *Biomat, Inc. v. Sampson*, 28 Kan. App. 2d 242, 244-45, 15 P.3d 846 (2000). As explained in *Hague v. Hallmark Cards, Inc.*, 48 Kan. App. 2d 118, 120-21, 284 P.3d 369 (2012), the FAA

7

"applies when a case involves a written agreement and interstate commerce. See 9 U.S.C. § 2 (2006). The United States Supreme Court has held that the Act was intended to have the broadest possible reach under the Commerce Clause. See *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57, 123 S. Ct. 2037, 156 L. Ed. 2d 46 (2003).

. . . .

"The [FAA] establishes a strong federal policy in favor of arbitrating disputes. *KPMG LLP v. Cocchi*, 565 U.S. ___, 132 S. Ct. 23, 25, 181 L. Ed. 2d 323 (2011). Thus, as our court noted in *Packard*[ *v. Credit Solutions of America, Inc.*], all doubts about the scope of what issues are subject to arbitration 'should be resolved in favor of arbitration.' [*Packard*,] 42 Kan. App. 2d 382, Syl. ¶ 4[, 213 P.3d 437 (2009)]."

However, where the "contract is silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of presumptions." *BG Group, PLC v. Republic of Argentina*, 572 U.S. ___, 134 S. Ct. 1198, 1206, 188 L. Ed. 2d 220 (2014). As to procedural preconditions to arbitration such as waiver, the United States Supreme Court has stated:

"[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. See *Howsam* [*v. Dean Witter Reynolds, Inc.*, 537 U.S. 79,] 86, 123 S. Ct. 588[, 154 L. Ed. 2d 491 (2002)] (courts assume parties 'normally expect a forum-based decisionmaker to decide forum-specific *procedural* gateway matters' (emphasis added)). These procedural matters include claims of 'waiver, delay, or a like defense to arbitrability.' *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)." 134 S. Ct. at 1207.

The thrust of PRA's argument is that the district court erred in ruling that PRA had waived its right to arbitrate Dixon's counterclaim by its litigation conduct. PRA insists this question must be arbitrated because of the presumption favoring arbitration and because the arbitration provision in the credit card agreement says nothing to refute this presumption.

8

In response, and as a threshold issue, Dixon argues the district court never found that the arbitration provision in the credit card agreement was binding on Dixon and PRA as Capital One's successor-in-interest. Dixon asks us to remand the case in order to allow the district court to make this factual determination in the event we disagree with the district court's waiver-of-arbitration determination. PRA counters that Dixon never objected to the district court's factual findings, meaning a remand is not appropriate and that we may assume a binding arbitration agreement. For support, PRA cites *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006), in which our Supreme Court held that "a litigant must object to inadequate findings of fact and conclusions of law [or such] omissions in findings will not be considered on appeal."

While it is true that Dixon did not object to the district court's findings or lack thereof, we consider the point immaterial for the purposes of deciding the narrow question before us of whether the court or an arbitrator should decide whether a party's conduct in litigation may constitute a waiver of its right to arbitrate a claim. As such, we can presume the district court made the assumption of the existence of a binding arbitration agreement between the parties to make its finding that PRA had waived its right to arbitrate Dixon's claims. Accordingly, we may consider the merits of PRA's appeal.

As we've stated, PRA argues the district court erred in analyzing and ultimately determining that PRA waived its right to arbitrate because under federal law such questions of waiver are presumed to be decided through arbitration. PRA contends that in light of this presumption, and paired with the FAA's strong presumption favoring arbitration, the district court should have abstained from analyzing whether PRA waived its right to arbitration and instead granted its motion to compel arbitration in order for an arbitrator to determine the issue of waiver.

Dixon counters by citing a number of federal circuit court cases that stand for the proposition that courts generally decide whether a party has waived its right to arbitrate through its litigation conduct. See *Grigsby & Associates, Inc. v. M. Securities Inv.*, 664 F.3d 1350, 1353-54 (11th Cir. 2011); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217 (3d Cir. 2007); *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 11-12 (1st Cir. 2005). However, as PRA notes, Dixon's cited authorities predate *BG Group*. In an effort to overcome this deficiency, Dixon cites to us the very recent Tenth Circuit Court of Appeals case, *In re Cox Enterprises, Inc. Set-Top Cable*, 790 F.3d 1112, 1120-21 (10th Cir. 2015), where the court held that the cable company had waived its right to compel arbitration by failing to assert such a right in a timely fashion after engaging in extensive litigation.

We consider *In re Cox* to be unhelpful to Dixon because nowhere in that case was it argued that the issue of waiver through litigation conduct be decided by an arbitrator. In contrast, in *BG Group*, 134 S. Ct. at 1207, as already discussed, the United States Supreme Court reiterated, without carving out an exception for questions related to litigation conduct, that courts presume procedural issues related to waiver-of-arbitration are to be decided through arbitration. Given that the United States Supreme Court has reaffirmed the more general rule without specifically following the circuits cited by Dixon, we are compelled to follow *BG Group*. Working under the assumption that the arbitration agreement is both binding on the parties and intended for waiver-of-arbitration issues to be decided through arbitration, we find that the issue of whether PRA's litigation conduct constitutes a waiver of its right to arbitrate Dixon's counterclaims must be decided by an arbitrator. See *First Weber Grp., Inc. v. Synergy Real Est. Grp., LLC*, 361 Wis. 2d 496, 526-27, 860 N.W.2d 498 (2015) (issues of whether party timely sought arbitration and whether party is estopped from compelling arbitration are both to be determined in arbitration, not by a court); *James v. Client Services, Inc.*, No. 14-2480-

JAR, 2015 WL 3649473, at *6 (D. Kan. 2015) (unpublished opinion) (issue of whether party waived right to arbitrate is subject to arbitration).

However, instead of remanding the case with instructions for the district court to refer the matter to arbitration as PRA requests, we are compelled to agree with Dixon on its threshold issue at this point because without any findings by the district court as to the binding nature of the arbitration provision on the parties, a referral to arbitration is premature. See *Dragon*, 282 Kan. at 356 (court may still consider a remand if the lack of specific findings precludes meaningful review). Unlike the district court's ruling on waiver, where it could presume a valid and binding arbitration agreement to decide the question, to refer the matter to arbitration the parties must actually have a binding arbitration agreement in order to arbitrate their dispute.

"[B]efore the [FAA's] heavy hand in favor of arbitration swings into play, the parties themselves must *agree* to have their disputes arbitrated. . . . [I]t remains a 'fundamental principle' that 'arbitration is a matter of contract,' not something to be foisted on the parties at all costs." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014). A court "may only compel arbitration of arbitrability if the parties *agreed* to arbitrate arbitrability." *James*, 2015 WL 3649473, at *3. Because a lack of any findings by the district court as to whether the arbitration provision of the credit card agreement was binding on the parties precludes our meaningful review of whether referral to arbitration in this particular case is required, we direct the district court, upon remand, to instead make findings as to whether the arbitration provision of the credit card agreement is binding on the parties and, if so, then to refer to arbitration the question of whether PRA waived its right to arbitrate Dixon's claims by its litigation conduct. See *Howard*, 748 F.3d at 979 ("FAA doesn't compel arbitration until it's proven the parties agreed to arbitrate").

11

## DID THE DISTRICT COURT ERR IN DISQUALIFYING PRA'S COUNSEL?

PRA also appeals the district court's decision to disqualify two of its counsel, arguing that no material misrepresentation of the law occurred that would justify their removal. We review a disqualification of an attorney based upon disciplinary or ethical rules de novo. *Venters v. Sellers*, 293 Kan. 87, 92, 261 P.3d 538 (2011).

At the same hearing in which the district court denied PRA's motion to compel arbitration, it also turned its attention to the parties' briefs. The district judge and counsel for PRA engaged in the following exchange:

> "THE COURT: [The quote] claims to have come from a case called *BG Group, PLC versus Republic of Argentina*. And it claims that that quote is on Page 1207-09. I have searched that case and cannot find that quote. Can you find it for me?
> "MR. STELTER: Sure, your Honor. Can I explain how the quote came to be and why it is there?
> "THE COURT: No. You tell me where the quote is.
> "MR. STELTER: The quote comes from a case called *Housh . . . versus Dinovo Investments, Inc.*, which is cited there in [the] 2003 District Court of Kansas case, and the quote from that case is identical to the citation Your Honor has referred to. It says that the arbitrator, comma, not a court, comma—(interrupted)
> "THE COURT: Well, you tell me where the quote is in the [United States] Supreme Court case.
> "MR. STELTER: It is in—Your Honor, I'm trying to explain to you how it got in there, and the citation in BG Group is not identical to that. The citation in BG Group states that, 'on the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of a particular procedural issue.'
> "THE COURT: But that's not the same language, is it?
> "MR. STELTER: Your Honor, I did not intend to—that exact quote was in Housh. It's—the judge in Housh attributed to Howsam. It is the identical—(interrupted)

12

"THE COURT: You've cited this case though. You cited the [United States] Supreme Court case.

"MR. STELTER: I cited the four cases for that . . . prospect.

"THE COURT: No. You cited the [United States] Supreme Court case *BG Group, PLC versus Republic of Argentina*. You cited three pages for a one-sentence quote, didn't you?

"MR. STELTER: I respectfully—(interrupted)

"THE COURT: That's a yes or no. That's what you did.

"MR. STELTER: Your Honor, . . . I apologize if there's a citation confusion[].

"THE COURT: This is not a citation confusion. This is a citation to a quotation that decides the issue before the court. That's not a matter of confusion.

"MR. STELTER: The quote came—(interrupted)

"THE COURT: That's a matter of misleading, sir.

"MR. STELTER: I apologize, Your Honor.

"THE COURT: It's not a matter of apology.

"MR. STELTER: I did not mean to mislead the court.

. . . .

"THE COURT: . . . The defense in their brief points out that quote's not there. You have not done anything to correct that prior to today. Nothing. You had fair warning that something was wrong with your presentation, and this is a quote that actually decides the issue. Because if that quote is accurate from the [United States] Supreme Court, I'm out of the case right now until the arbitrator says maybe I can come back in. Do you agree? Yeah, because that's what—that's what you said.

"MR. STELTER: I will concede to remove the quotations. I believe that the substance of that quote is correct and that is—(interrupted)

"THE COURT: No. Sir—sir, you quoted—you quoted a statement. A first year law student would not do that.

"MR. STELTER: Judge, may I explain how the quote arise [*sic*]?

"THE COURT: No.

"MR. STELTER: Okay. My apologies then.

"THE COURT: I consider this a deliberate attempt to mislead the court. I don't know who would do something like that."

13

Thus, contemporaneously with its order denying PRA's motion to compel arbitration, the district court entered a second order striking the appearance of two lawyers for PRA for making a material misrepresentation of the law in PRA's supplemental brief.

A review of the record shows PRA incorrectly attributed the following quote from a District of Kansas case, *Housh v. Dinovo Investments, Inc.*, No. 02-2562-KHV, 2003 WL 1119526, at *9 (D. Kan. 2003) (unpublished opinion), to *BG Group*, a United States Supreme Court case, twice in its supplemental brief:

> "The United States Supreme Court has recently re-affirmed that 'the arbitrator, not a court, should decide allegations of waiver, delay or like defenses to arbitrability.'"

with the following string cite after the quoted line:

> "*See BG Group, PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1207-09 (2014) *citing Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). *See also National American Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462, 466 (8th Cir. 2003); *Housh v. Dinovo Investments, Inc.*, 2003 WL 1119526, *9 (D. Kan. 2003)."

A functionally similar proposition and citation was also included in PRA's response to Dixon's supplemental briefing:

> "If this Court applies the correct federal precedent regarding waiver, it should follow the plainly stated instruction from the United States Supreme Court that 'the arbitrator, not a court, should decide allegations of waiver, delay or like defenses to arbitrability.' *See BG Group, PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1207-09 (2014); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002); *National American Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462, 466 (8th Cir. 2003); *Housh v. Dinovo Investments, Inc.*, 2003 WL 1119526, *9 (D. Kan. 2003)."

14

PRA readily admits the incorrect citation but claims the mistake was inadvertent. The quoted material in question does not appear in *BG Group*. Rather, it is found in *Housh*, 2003 WL 1119526, at *9 ("The Supreme Court further noted that the presumption is <u>that the arbitrator, not a court, should decide allegations of waiver, delay or like defenses to arbitrability.</u>"), the final case cited in PRA's string cites.

Disqualification of an attorney destroys an attorney-client relationship and deprives a party of representation of its own choosing and, therefore, should be reviewed "with extreme caution." *Zimmerman v. Mahaska Bottling Co.*, 270 Kan. 810, 814, 19 P.3d 784 (2001); see also *LeaseAmerica Corp. v. Stewart*, 19 Kan. App. 2d 740, 750, 876 P.2d 184 (1994) ("'The right to be represented by counsel of choice is an important one, subject to override only upon a showing of compelling circumstances.' [Citation omitted.]").

> "The decision to disqualify an attorney chosen by a party to represent him in a lawsuit is of serious concern and the [court's] inherent power to do so should only be exercised where the integrity of the adversary process is threatened. Even then, the court should not act unless 'the offending attorney's conduct threatens to "taint the underlying trial" with a serious ethical violation.' *Field v. Freedman*, 527 F. Supp. 935, 940 (D. Kan. 1981)." *Beck v. Bd. of Regents of State of Kan.*, 568 F. Supp. 1107, 1110 (D. Kan. 1983).

See *Chrispens v. Coastal Refining & Mktg., Inc.*, 257 Kan. 745, 772-73, 897 P.2d 104 (1995) (recognizing *Beck*'s applicability in state court).

We must answer the question of whether this misattribution threatened the integrity of the adversary process, allowing the district court to properly disqualify PRA's counsel. See *Beck*, 568 F. Supp. at 1110. PRA argues that its mistake could not have misled the district court and, therefore, could not have threatened the adversarial process because each case in its string cite, including *Housh* and *BG Group*, stood for the proposition contained in the quoted language. *BG Group*, 134 S. Ct. at 1207, states:

15

"[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. . . . These procedural matters include claims of 'waiver, delay, or a like defense to arbitrability.' [Citation omitted.]"

This language is functionally identical to that quoted in *Housh*, with both quoted portions standing for the proposition that courts presume the parties intend for waiver-of-arbitration issues to be decided in arbitration. Moreover, both *Housh* and *BG Group* derive this proposition from *Howsam*, 537 U.S. at 86, further supporting both cases' uniformity. Thus, the district court could not have been misled by the misattribution of the quote. With this circumstance precluding the possibility that the district court could have reached an incorrect decision through PRA's incorrect citation, we conclude that striking the appearance of PRA's two attorneys was inappropriate because their error did not constitute a material misrepresentation of the law.

The judgment of the district court is reversed, and the case is remanded with directions for the district court: (1) to make findings as to whether the arbitration provision of the credit card agreement is binding on the parties and, if so, to refer to arbitration the question of whether PRA's litigation conduct constituted a waiver of its right to arbitrate Dixon's claims, and (2) to reinstate PRA's counsel.

Reversed and remanded with directions.