**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 5, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
_____

JESSE ROMERO, on behalf of himself and
all others similarly situated,

     Plaintiff - Appellee,

v.

TITLEMAX OF NEW MEXICO, INC.,

     Defendant - Appellant,

and

TMX FINANCE, LLC; TRACY YOUNG,

     Defendants.

No. 18-2077
(D.C. No. 1:17-CV-00775-KG-SCY)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

This is an interlocutory appeal from a partial denial of a motion to compel

arbitration. Plaintiff-Appellee Jesse Romero filed a class action complaint in New

Mexico state court against Defendants-Appellants TitleMax of New Mexico, Inc.,

TMX Finance LLC, and Tracy Young (collectively "TitleMax") that alleged

TitleMax's title loan business violates New Mexico consumer protection statutes and

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

common law consumer protection principles. TitleMax then timely removed the case to federal court based on 28 U.S.C. § 1332(a) or, in the alternative, 28 U.S.C. § 1332(d). Subsequently, TitleMax filed a motion with the district court to compel arbitration pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* The district court determined that some of Romero's claims were subject to arbitration, but that others were not, and accordingly granted the motion in part and denied it in part. Exercising jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(B), we AFFIRM.

## I

TitleMax provides title loans. A title loan is a short-term loan with a high interest rate where a car serves as collateral. On July 19, 2016, Jesse Romero took out the first of three title loans from TitleMax. His 2004 Jaguar X-Type served as collateral. The first loan was for $1,005.00 at an annual interest rate of 156.4484%. On August 6, 2016, Romero took out a second title loan where the same car served as collateral. This time the loan was for $2,074.26 at an annual interest rate of 144.0365%. Approximately nine months later, on May 15, 2017, Romero took out a third title loan on the same car. This time the loan was for $1,940.44 at an annual interest rate of 144.4116%. Each loan agreement had the same material terms, headings, clauses, and title (Loan Agreement), and varied only in the dates that they were signed, the identifying loan numbers, the amount of the loan, and the interest rate charged. The second loan was used in part to pay off the first, and the third loan was used to pay off the second loan.

Each loan agreement also contained an identical Waiver of Jury Trial and Arbitration Provision ("Arbitration Clause") provided in a question-and-answer table. The Arbitration Clause provides in part:

> This [Arbitration] Clause covers Disputes that would usually be decided in court and are between us (or a Related Party) and you. In this [Arbitration] Clause, the word Disputes has the broadest meaning. It includes all claims related to your application, this Agreement, the Vehicle, the Loan, any Other Loan or your relationship with us. It includes claims related to any prior applications or agreements. It includes extensions, renewals, refinancings, or payment plans. It includes claims related to collections, privacy, and customer information. It includes claims related to the validity of this Agreement. **But, it does not include disputes about the validity, coverage, or scope of this [Arbitration] Clause or any part of this [Arbitration] Clause. These are for a court and not the [third-party Arbiter] to decide.**

App'x at 94, 99, 104. The Arbitration Clause also contains an opt-out provision:

> If you do not want this [Arbitration] Clause to apply, you must tell us in writing within 60 calendar days after signing this Agreement. Send your signed, written notice to the Notice Address. Give your name, address, loan number and loan date. State that you "opt out" of the arbitration clause. We do not allow electronic delivery.

*Id.* at 94, 99, 104. Romero did not opt out of the first or second loan agreements. However, on May 22, 2017, Romero's counsel sent compliant written notice to TitleMax stating that Romero was exercising his opt-out right under the Arbitration Clause for the third loan agreement.

Shortly thereafter, on June 20, 2017, Romero filed a class action complaint in New Mexico state court against TitleMax on behalf of all citizens of New Mexico who took out a title loan with TitleMax on or after March 11, 2013. TitleMax timely removed the case to the United States District Court for the District of New Mexico

3

based on diversity of citizenship jurisdiction or, in the alternative, jurisdiction under the Class Action Fairness Act.  In the operative class action complaint Romero alleges TitleMax's lending practices are unconscionable trade practices under New Mexico law.  He seeks, among other relief, a rescission of each loan agreement between TitleMax and each putative class member, restitution for the putative class, treble damages pursuant to statute, a permanent injunction against TitleMax's current loan products, reasonable attorneys' fees, and costs.

TitleMax then filed a motion with the district court to, among other things, compel all of Romero's claims to arbitration, enforce the arbitration clause as to all proposed class members who did not opt out of the Arbitration Clause, and stay all court proceedings.  The district court granted the motion in part and denied it in part for reasons explained in a teleconference between the district court and the parties. The district court held that Romero did not opt out of the Arbitration Clauses in the first and second loan agreements, that Romero properly exercised his right to opt out of the third loan agreement's Arbitration Clause, and that the three loan agreements were each individual loan agreements.  As a result, the district court held that Romero could litigate claims arising from the third loan agreement but had to proceed to arbitration on claims related to the first and second loan agreements.  The district court further declined to compel arbitration for absent class members since no class had been certified and hence the absent class members were not before the court.

## II

TitleMax asserts that the district court erred when it ruled on the issue of arbitrability as regards the third loan agreement when the threshold question of arbitrability should have been determined by an arbitrator. TitleMax also appears to argue that Romero did not properly opt out of arbitration under the third loan agreement. We review a denial of a motion to compel arbitration de novo. *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003).

A party aggrieved by a failure to arbitrate under a written agreement can petition a federal district court to compel arbitration. 9 U.S.C. § 4. But the FAA does not require a party "to submit to arbitration any dispute which he has not agreed so to submit." *Spahr*, 330 F.3d at 1269 (quoting *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Furthermore, the Supreme Court has recognized "the fundamental principal that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted). In sum, "the question of arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Spahr*, 330 F.3d at 1269 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)) (emphasis and internal quotation marks omitted). We therefore examine the written agreement itself to determine whether the parties intended to submit the threshold question of arbitrability to an arbitrator or to a court.

Our circuit uses a three-part test "[t]o determine whether a particular dispute falls within the scope of an agreement's arbitration clause." *Cummings v. FedEx*

5

*Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (quoting *Louis*

*Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir.

2001)).

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Id.* (emphasis omitted). The arbitration clause at issue does not neatly fit within this

three-part test. Here, the Arbitration Clause is broad, but it also clearly provides that

"disputes about the validity, coverage, or scope of this [Arbitration] Clause or any

other part of this [Arbitration] Clause . . . are for a court . . . to decide." App'x at 94,

99, 104 (emphasis omitted). Thus, while the range of "Disputes" which may be sent

to arbitration is "broad" under the Arbitration Clause, the Arbitration Clause also

grants "broad" authority to courts to interpret the Clause's validity, coverage, scope,

or any other part of the Clause.

TitleMax presents a straightforward arbitrability argument. TitleMax contends

Romero did not opt out of arbitration in the second loan agreement, which means he

must arbitrate all claims related to the second loan and refinancings of the second

loan. From this, TitleMax argues not only that Romero's third loan agreement is

actually a refinancing of his second loan, but also that the loan agreements grant an

6

arbitrator (rather than a court) the authority to determine this arbitrability question because none of the loan agreements define "refinancing." Consequently, TitleMax argues the district court erred when it refused to compel arbitration for Romero's claims stemming from the third loan agreement.

This argument, however, conflicts with the plain language of the Arbitration Clause in the third loan agreement. The Arbitration Clause provides that disputes about the "validity, coverage, or scope of this [Arbitration] Clause or any other part of this [Arbitration] Clause" will be determined by a court, and the opt-out provision is part of the Arbitration Clause. While TitleMax attempts to argue otherwise, whether the third loan agreement is a refinancing of the second loan agreement is actually a dispute about the coverage, scope, or another part (the opt-out provision) of the Arbitration Clause. And, under the plain language of the Arbitration Clause, such a dispute is for a court to decide, not an arbitrator. Therefore, the district court properly decided the arbitrability issue.

Even so, TitleMax asserts that Romero did not properly opt out of arbitration in the third loan agreement. The opt-out provision provides:

> If you do not want this [Arbitration] Clause to apply, you must tell us in writing within 60 calendar days after signing this Agreement. Send your signed, written notice to the Notice Address. Give your name, address, loan number and loan date. State that you "opt out" of the arbitration clause. We do not allow electronic delivery.

App'x at 94, 99, 104. One week after Romero signed the third loan agreement, his attorney mailed compliant written notice to TitleMax pursuant to the opt-out provision. TitleMax does not—and cannot—dispute that Romero performed all the

7

necessary steps to opt out of the Arbitration Clause in the third loan agreement. He did. Instead, TitleMax appears to argue that Romero *never* could have opted out of arbitration in the third loan agreement because he failed to opt out of arbitration in the second loan agreement.

The district court disagreed and refused to compel arbitration for claims related to the third loan agreement. The district court determined that all three loan agreements were separate, individual agreements because each contained different identifying loan numbers, assessed different interest rates, and lent different amounts of money. Another fact supports the district court's conclusion that each loan agreement is an individual contract: Each loan agreement contains its own, albeit identical, arbitration clause. Hence, consistent with New Mexico case law, the Arbitration Clause in the third loan agreement must mean *something*. *See, e.g., Pub. Serv. Co. of N.M. v. Diamond D Const. Co.*, 33 P.3d 651, 662 (N.M. Ct. App. 2001) (explaining that New Mexico courts "will not read a particular provision of a contract such that another provision is rendered meaningless"). Despite this, and in the absence of any supporting authority, TitleMax asks us to render an entire clause in the third loan agreement meaningless. We decline to do so and instead give full effect to the parties' decision to include an opt-out provision in the third loan agreement's Arbitration Clause.

## III

TitleMax also raises several alternative theories in support of its motion to compel arbitration. These arguments are either premature or procedurally improper. For example, the district court never ruled on the portion of TitleMax's motion requesting a stay pending arbitration. Therefore, this court lacks interlocutory jurisdiction over TitleMax's stay request because the district court never refused a stay. *See* 9 U.S.C. § 16(a)(1)(A) ("An appeal may be taken from . . . an order . . . *refusing* a stay of any action under section 3 of [the FAA] . . . ." (emphasis added)).

Further, the majority of TitleMax's briefing addresses class action considerations under Federal Rule of Civil Procedure 23(a) such as numerosity, commonality, and typicality, but nothing in the record demonstrates that either party has moved for class certification or sought discovery related to class certification.[1] The district court is in a better position to address these concerns when presented with a proper Rule 23 motion for class certification or a "pre-emptive" motion to deny class certification. *See, e.g.*, *Adams-Chevalier v. Spurlock*, No. 16-cv-02691-WYD-STV, 2017 WL 5665149, at *6–7 (D. Colo. Sept. 25, 2017) (acknowledging pre-emptive motions to deny class certification). Accordingly, we decline to address

---

[1] TitleMax appears to have relied on a misunderstanding of *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litigation*, 790 F.3d 1112 (10th Cir. 2015), for its Rule 23 arguments. *In re Cox* addressed whether a party had waived the right to compel arbitration by waiting to assert that right *after* extensive briefing— literally thousands of pages—and multiple hearings regarding a range of topics including motions to dismiss, admissible expert testimony, expansive discovery, and (importantly) highly contested class certification. *Id.* at 1116–18. When compared to *In re Cox*, the present case is only in its preliminary stages.

these premature or procedurally improper arguments.

## IV

Affirmed.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

10