(284 P.3d 369)
No. 106,470

JANA HAGUE, *Appellee*, v. HALLMARK CARDS, INCORPORATED, and UNION SECURITY INSURANCE COMPANY, a/k/a ASSURANT EMPLOYEE BENEFITS, *Appellants*.

Opinion filed August 24, 2012.

*Jeffrey D. Hanslick* and *Curtis R. Summers*, of Husch Blackwell LLP, of Kansas City, Missouri, for appellants.

*James L. Wisler* and *Ryan Rising*, of Wisler Law Office, of Lawrence, for appellee.

Before BRUNS, P.J., MARQUARDT and LEBEN, JJ.

LEBEN, J.: After her employer denied disability benefits to her, Jana Hague sued the company, Hallmark Cards, Inc., for breach of contract and for unpaid wages. But she was subject to an agreement with Hallmark that required arbitration of any claims "under the law" and "arising out of the employee's employment."

Hague contends that there are exclusions from the arbitration requirement that can be found in Hallmark documents, including that claims objecting to Hallmark policies aren't subject to arbitration. But what Hague has filed in court is a lawsuit, not an objection

to Hallmark policies, and her agreement with Hallmark requires that legal claims be arbitrated. We therefore reverse the district court's ruling that her claims were not subject to arbitration, and we return the case to the district court with directions to stay further proceedings in the lawsuit and to compel arbitration.

FACTUAL BACKGROUND

Hague began suffering health problems in 2008, and she took a leave of absence from her employment at Hallmark Cards, Inc. Hallmark provides short-term disability benefits to its employees under a company-funded program, and Hallmark initially approved Hague's application for short-term disability benefits. But after additional review, Hallmark denied further benefits. Hallmark's decision was supported by Union Security Insurance Company, which Hallmark hired to review short-term disability benefit requests. Hague didn't return to work, and Hallmark fired her.

We have not detailed Hague's health problems or the reasons that Hallmark gave for denying her short-term disability benefits. That's because the issues of this lawsuit relate only to the proper forum within which to determine the merits of Hague's legal claims—before an arbitrator or in court—and not to the merits themselves.

Hague filed suit against Hallmark. She asked that the court determine that she should have received further short-term disability benefits and that the court award her back benefits plus interest, penalties, and attorney fees. She characterized her claims as "claims filed to recover unpaid employee benefits," a claim for "breach of contract," and a claim for "violations of the Kansas Wage Payment Act."

Hallmark moved to dismiss or stay the lawsuit, putting it on hold while the parties arbitrated their dispute. Hallmark claimed that Hague's claims were subject to mandatory arbitration under Hallmark's dispute-resolution program.

Hague argued that the dispute-resolution program didn't require her to arbitrate her claims, and the district court agreed. The district court cited a provision in the short-term disability policy that it quoted as saying: "STD [short-term disability] claims are not

a covered claim under the DRP [dispute-resolution program]." The district court held that " 'any conflicting language' " in the dispute-resolution policy must be "construed against Hallmark," apparently because Hallmark chose the language.

Hallmark has appealed to this court. We have jurisdiction to hear the appeal under 9 U.S.C. § 16(a)(1)(A), (B) (2006).

## ANALYSIS

We must determine whether the claims Hague has made in her lawsuit are subject to arbitration under Hallmark's dispute-resolution program. Two overriding considerations guide us in this process. First, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (2006), applies here, and under that statute "[a]ll doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Packard v. Credit Solutions of America, Inc.*, 42 Kan. App. 2d 382, Syl. ¶ 4, 213 P.3d 437 (2009). Second, we must independently review the provisions that call for arbitration to determine whether they apply. 42 Kan. App. 2d at 384. When we do, we find that Hallmark's dispute-resolution program document clearly requires that Hague's claims be arbitrated.

*We Apply the Federal Arbitration Act, Which Strongly Favors Arbitration.*

The Federal Arbitration Act applies when a case involves a written agreement and interstate commerce. See 9 U.S.C. § 2 (2006). The United States Supreme Court has held that the Act was intended to have the broadest possible reach under the Commerce Clause. See *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57, 123 S. Ct. 2037, 156 L. Ed. 2d 46 (2003).

Hague argues that some concepts of Kansas law should be applied here, specifically canons of contract interpretation like construing ambiguities against Hallmark as the drafter of the documents. But Hague makes no argument that the Federal Arbitration Act is inapplicable. The Act applies generally to employment agreements, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118-19, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001), and other courts have applied the Act when considering whether Hallmark's dispute-res-

olution program required arbitration of an employee's claim against Hallmark. *E.g., Rangel v. Hallmark Cards, Inc.*, No. 10-4003-SAC, 2010 WL 781722, at *3-4 (D. Kan. 2010) (unpublished opinion); *Kenney v. Hallmark Cards, Inc.*, No. 08-CV-2134-CM, 2009 WL 102682, at *2 (D. Kan. 2009) (unpublished opinion); *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 20 (Mo. App. 2008). We apply it here.

The Federal Arbitration Act establishes a strong federal policy in favor of arbitrating disputes. *KPMG LLP v. Cocchi*, 565 U.S. ___, 132 S. Ct. 23, 25, 181 L. Ed. 2d 323 (2011). Thus, as our court noted in *Packard*, all doubts about the scope of what issues are subject to arbitration "should be resolved in favor of arbitration." 42 Kan. App. 2d 382, Syl. ¶ 4. As the United States Supreme Court has directed, ambiguities as to the scope of the arbitration clause itself are resolved in favor of arbitration. *Volt Info. Sciences v. Leland Stanford Jr. U.*, 489 U.S. 468, 475-76, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). Accordingly, when interpreting provisions that determine the scope of the arbitration agreement, normal state-law canons of contract construction—such as construing ambiguous provisions against the party that drafted it—generally are trumped by the Act's policy in favor of arbitration. *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 382 (1st Cir. 2011); see *Volt Info. Sciences*, 489 U.S. at 475-76; *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *Gulf Ins. Co. v. Neel-Schaffer, Inc.*, 904 So. 2d 1036, 1049-50 (Miss. 2004).

For the presumption in favor of arbitration to apply, of course, there must first be a valid agreement between the parties. *Granite Rock v. Intern. Broth. of Teamsters*, 561 U.S. 287, 299-00, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010). If so, and if there's a provision in the parties' agreement that seems to require arbitration, then arbitration should be ordered " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' [Citations omitted.]" *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986).

Here, Hague doesn't dispute that there's a valid agreement between herself and Hallmark: she sets out the sole issue on appeal as whether her claim is a "covered claim," and thus subject to arbitration, under Hallmark's dispute-resolution program. (Although not contested here, the Kansas federal court has found that Hallmark's current dispute-resolution program creates a valid, contractual arbitration agreement between Hallmark and its employees because both employer and employee are required to arbitrate. *Rangel*, 2010 WL 781722, at *5; *Kenney*, 2009 WL 102682, at *2-3.) With the general principles of the Federal Arbitration Act in mind, we turn next to consider whether Hallmark's dispute-resolution program requires the arbitration of Hague's claims.

*Hallmark's Dispute-Resolution Program Requires Arbitration of Hague's Claims.*

We start with the four-page agreement that sets out the terms of Hallmark's dispute-resolution program. It describes the program as "a structured dispute resolution process that consists" of four sequential parts, with binding arbitration as the final step:

- "Level 1—Open Door Process," where "an employee and the management team attempt to resolve the employee's dispute."
- "Level 2—Final Internal Review," where "the Company's designees will review the employee's written complaint and other relevant documentation and issue a written decision."
- "Level 3—Nonbinding Mediation," where "an independent mediator helps the employee and the Company open lines of communication in an attempt to facilitate resolution."
- "Level 4—Binding Arbitration," where "an independent arbitrator provides the employee and the Company with a ruling on the merits of the employee's covered claims."

That describes the process but doesn't tell us what's covered. Separate sections describe "Covered Claims" and "Excluded Claims." Only "covered claims" can reach Level 4, binding arbitration, and these include claims arising out of the employee's employment that give rise to a legal claim for breach of contract, for unpaid wages, or for other compensation:

"Covered Claims

"While employees may submit any timely-filed employment-related dispute at Levels 1 and 2, only covered claims will be accepted and processed at Level 3 and 4. *Covered claims are those claims arising out of the employee's employment* that the Company may have against the employee or *that the employee may have against the Company* and/or individual employees acting within the scope of their employment regarding alleged unlawful or illegal conduct on the part of the Company and/or individual employees acting within the scope of their employment *that give rise to a claim under the law including, but not limited to, the following*:

. . . .
• "Claims for breach of contract or covenant (express or implied).

. . . .
• "Claims for unpaid wages or other compensation." (Emphasis added.)

We must also check to see whether Hague's claims have been excluded from the arbitration process. Excluded claims include ones for benefit under ERISA benefit plans and ones that seek to establish, modify, or object to a Hallmark company policy:

"Excluded Claims

"The following claims shall be excluded from the DRP [dispute-resolution program]:
• "Claims for benefits under a Company benefit plan covered by ERISA . . . .

. . . .
• "Claims that seek to establish, modify, or object to the Company's policies (including, but not limited to, compensation, vacation and short-term disability) except claims that allege discriminatory application or impact of such policies."

Hague does not contend that the short-term disability benefits are covered by ERISA, but she does contend that her claims are excluded because she objected to some of the procedures under which Hallmark administered its short-term disability benefits.

If we consider only the terms of the dispute-resolution plan itself, Hague's claims are a "covered claim" subject to the full dispute-resolution process, including Level 4 arbitration on the merits of the claim. Hague contends she was contractually entitled to the short-term disability benefits, and she sued Hallmark for breach of contract to get them. Claims "under the law" arising out of a person's Hallmark employment are covered, and breach-of-contract claims are explicitly included, as are claims for unpaid wages or

other compensation. Hague also explicitly set out a claim in her petition under the Kansas Wage Payment Act for unpaid wages.

Hague contends that her clams are nonetheless excluded as ones that "seek to establish, modify, or object" to Hallmark policies. She emphasizes that she objected to Hallmark's use of an insurance company to help review the claims because she contends it had a conflict of interest.

But Hague's lawsuit cannot be premised on any attempt by her to "establish" or "modify" a Hallmark policy. Only Hallmark can create an employee benefit that the employee might then have some entitlement to; an employee can't establish a benefit program without the employer's agreement. Nor can an employee "modify" an existing employee benefit so as to expand the employee's rights without the company's agreement. If an employee can't establish or modify a company policy—and then claim legal entitlement to the newly established or modified benefit—the mere objection to a company policy doesn't create any legal entitlement for the employee, either.

Hallmark's dispute-resolution program reasonably excludes employee attempts to establish, modify, or object to Hallmark policies from mandatory arbitration. No company is obligated to give an arbitrator the authority to create or modify policies that would cost the company money or place other burdens upon it without its agreement.

So far, based only on the document that establishes the dispute-resolution program, it appears that Hague's claims are covered and subject to arbitration. We turn next to the provision within Hallmark's "Career Rewards" booklet that sets out the terms of its short-term disability benefits at the time of Hague's employment.

Hallmark's short-term disability plan provided for continuation of an employee's pay for up to 6 months. After that, a long-term disability plan provided the potential for another 6 months of payments. The short-term benefits were provided entirely at Hallmark's expense, and Hallmark's policy provided that its own "Medical Department" was "solely responsible" for determining whether an employee qualified for short-term benefits. Long-term benefits were provided through a voluntary employees' beneficiary associ-

ation under Section 501(c)(9) of the Internal Revenue Code, and the long-term plan was administered by Union Security Insurance Company. But one condition for receipt of long-term benefits was that the employee had to first qualify either for short-term disability benefits or workers-compensation benefits.

Things become a bit confusing because the short-term disability program has its own "appeal process." We will set it out in full because the district court relied upon one sentence in it (misquoted a bit) for its conclusion that Hague's lawsuit wasn't subject to arbitration. The key features are that the appeal provided through the short-term disability program only considers "whether proper procedures were followed" and only includes Level 2, the process for internal review within Hallmark:

"SHORT-TERM DISABILITY POLICY

. . . .

"CASE MANAGEMENT PROVISIONS AND APPEAL PROCESS

"Eligibility for STD [short-term disability] benefits is case managed. If an absence extends beyond established medical guidelines or if there is no clear medical rationale for work restrictions, the treating physician's office may be contacted by the Medical Department to determine whether there are extenuating circumstances that would justify a period of incapacity longer than the period determined by the Medical Department.

"If a reasonable medical explanation for exceeding established medical guidelines is not provided and the employee remains off of work for three or more days beyond the length of time the Medical Department has determined to be appropriate, the employee may request a third-party review. Provided the employee timely signs and returns a consent form to the Medical Department[,] . . . trained medical personnel at an outside case management firm will review records that were timely submitted and determine the appropriate period for STD benefits. STD benefits will not be paid during the third-party review until the results of the review are provided to the Medical Department.

"If the employee is not satisfied with the results of the third-party review and/ or the case management process, and the employee wants to pursue a claim, the employee must file a request for a Level 2—Final Internal Review under the Hallmark Dispute Resolution Program (DRP). However, *this review will only consider whether proper procedures were followed* (it is not a medical review) and the decision will be upheld if it is reasonable. *The employee's claim is not a covered claim under the DRP and therefore the employee's claim will not be eligible for review at Levels 3 or 4 of the DRP.* For more information about the DRP, see the Problem Solving section of this booklet." (Emphasis added.)

So what did the short-term disability policy add to our understanding? It contains its own appeal process, one that applies *only* to whether proper procedures were followed. That procedure-only appeal involves only one step—the one described in the dispute-resolution program as Level 2, in which a designated Hallmark representative will consider the employee's appeal, review relevant documents, and issue a written decision. In addition, this procedure-only appeal is *not* a "covered claim" under the dispute-resolution program and the employee doesn't have the ability to obtain binding arbitration on whether proper procedures were followed.

But nothing in the short-term disability policy's grant of a procedural appeal purports to amend the document that established and governs the Hallmark dispute-resolution program. That document, as we have already noted, provides for the resolution of claims "under the law" arising out of a person's Hallmark employment, including claims for breach of contract, for unpaid wages, and for other compensation. And those are the claims being pursued by Hague.

We noted previously that the district court quoted the Hallmark short-term disability policy as saying: "STD [short-term disability] claims are not a covered claim under the DRP [dispute-resolution program]." The actual sentence in the short-term disability policy's section on appeals read: "The employee's claim is not a covered claim under the DRP and therefore the employee's claim will not be eligible for review at Levels 3 or 4 of the DRP." In context, "[t]he employee's claim" here referred to the employee's claim that proper procedures weren't followed in denying short-term disability benefits; the *only* "claim" being discussed in the paragraph was the employee's Level 2 appeal over the procedures that had been used to deny short-term disability benefits.

Hague wants to read "[t]he employee's claim" to refer to the employee's substantive legal claim for short-term disability benefits, along with any related relief (like attorney fees, which she sought in her petition) that the employee might later seek in a lawsuit. We can't do so given the context of the paragraph and the admonition that doubts about the scope of an arbitration provision should be resolved in favor of arbitration.

Hague's claims are subject to arbitration under her employment agreement, which includes the Hallmark dispute-resolution program. We therefore reverse the district court's order and remand the case with directions to grant Hallmark's motion to stay further proceedings in the lawsuit and to compel arbitration.