NOT DESIGNATED FOR PUBLICATION

No. 119,060

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SCOTT BURCH,
*Appellant*,

v.

HEATRON, INC. and
EC MANUFACTURING, LLC,
*Appellees*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; DAVID J. KING, judge. Opinion filed December 7, 2018. Affirmed.

*Tedrick A. Housh III* and *Amanda E. Sisney*, of Lathrop Gage, LLP, of Kansas City, Missouri, for appellant.

*Jason M. Hans* and *Charles W. German*, of German May PC, of Kansas City, Missouri, and *C. Brooks Wood*, of Wood Law Office LLC, of Kansas City, Missouri, for appellees.

Before MALONE, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM: Scott Burch sued his former employer, Heatron, Inc. (Heatron), and its subsidiary, EC Manufacturing, LLC (ECM), alleging that Heatron and ECM failed to pay him commissions as agreed and that they owed him monetary damages under theories of breach of contract, promissory estoppel, and quantum meruit. Heatron and ECM moved to compel arbitration, and the district court granted the motion. A panel of arbitrators issued an award in favor of Heatron and ECM on all of Burch's claims. Heatron and ECM moved in the district court to confirm the award, and Burch moved to

1

vacate it. After a hearing, the district court confirmed the arbitration award. Burch appeals, arguing that the district court erred by ordering arbitration and also by confirming the resulting arbitration award. For the reasons stated below, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Burch began working for Heatron in 2010 as a regional sales and business manager. Throughout his employment by Heatron, Burch worked in various sales positions. In the course of his employment, in December 2011, Burch participated in negotiations with R.J. Reynolds Company (RJR) for Heatron to manufacture a heating element for an electronic cigarette.

On February 27, 2012, Burch signed an employment agreement (the 2012 Agreement), which set forth Burch's compensation plan, including "a salary, 'variable compensation,' and a 'bonus' provision for up to 2% on 'new business' and on 'substantially new revenue from existing customers.'" The 2012 Agreement set forth that Burch's bonus, if he met "100% of [his] goal," would be $40,000. The 2012 Agreement was "effective and applies to all contracts entered into between 10/01/2011 and 9/3[0]/2012"—Heatron's 2012 fiscal year—"and supersede[d] all plans and terms previously in effect." The 2012 Agreement contained the following arbitration provision:

> "All disputes which involve claims for $3000 or more, and which arise out of the participant's employment or termination thereof, whether or not such claims are based exclusively on the terms of this Plan, shall be submitted to binding arbitration in the State of Kansas if the parties are unable to resolve their dispute within thirty (30) days after exercising good faith efforts. The Uniform Arbitration Act of the State of Kansas shall apply to all aspects of the arbitration between the parties. The parties agree that after arbitration has been initiated[,] all other civil actions between the parties shall be stayed until after the arbitration proceeding is concluded.

"This Plan shall be governed in all respects by the law of the State of Kansas. The arbitrators shall honor the terms and conditions of the Plan and construe it in accordance with the laws of the State of Kansas. The arbitration shall be binding on the parties and be honored by them without resort to any further court proceedings. An Arbitration award shall be entered as a judgment in any court of competent jurisdiction.

"Neither party may demand arbitration or institute any lawsuit in any form arising out [of] this Plan, or arising in any way out of the employment relationship between the parties, more than one (1) year after the claim or cause of action has arisen."

At about the same time Burch signed the 2012 Agreement, he sent a multiyear proposal to RJR about Heatron's development of the heating element and other components of the electronic cigarette. Burch claims that on June 6, 2012, Heatron's president and co-owner of ECM, H.B. Turner, orally agreed that Heatron would continually pay Burch 2 percent of RJR gross sales revenue, rather than limiting the 2 percent bonus to the first year of work for RJR. This oral agreement contradicted language in the 2012 Agreement that limited the 2 percent bonus to "new business" and "substantially new revenue from existing customers."

Ultimately, because of the potential tort liability risk to Heatron from working within the tobacco industry, Heatron decided to create a new and separate corporation to conduct the RJR business. As a result, on or about September 30, 2012, some of Heatron's shareholders created ECM, which then began production of the RJR electronic cigarettes. For fiscal year 2012, Burch received a 2 percent bonus of $18,690 for the RJR business. That same fiscal year, Burch also received a 2 percent bonus for his work in growing other core business for Heatron, such as the Ametek account, for which Heatron manufactured aircraft heaters. In fiscal year 2012, Burch's total bonus was $40,000.

Although Heatron asked Burch to sign employment agreements much like the 2012 Agreement for fiscal years 2013 and 2014, Burch did not do so. Even so, Burch received more than $40,000 in bonus compensation in fiscal years 2013 and 2014. Burch

contends that he had additional conversations with Turner in fiscal year 2013 in which Turner promised that he would continue to receive the 2 percent bonus on RJR revenue throughout the coming years. For fiscal year 2013, at least part of Burch's $84,000 bonus was based on revenue from RJR. For fiscal year 2014, however, Burch contends that none of his $90,000 bonus was based on RJR revenues, despite ECM doing $85.3 million in assembly business for RJR.

Heatron ultimately informed Burch that he would not receive any further bonus or commission compensation for the RJR business. After Burch complained, Heatron terminated his employment as of January 30, 2015.

On April 29, 2015, Burch filed suit in Leavenworth County District Court. He brought claims of breach of contract, promissory estoppel, and quantum meruit against Heatron, and he also sued ECM under an alter ego theory of liability. Based on the alleged oral contracts with Turner, Burch sought "commissions on gross sales revenue from the RJR project" for fiscal years 2014 and 2015. Under quantum meruit, Burch sought compensation for "the full market value of his sales efforts that benefitted" Heatron and ECM.

Heatron and ECM filed separate answers on June 1, 2015. In its answer, Heatron asserted that Burch's claims "are subject to arbitration pursuant to provisions contained in the written incentive plans provided to" Burch, so "this action should be dismissed or stayed pending arbitration." ECM did not expressly assert that arbitration was required, but it incorporated by reference Heatron's affirmative defenses. Heatron and ECM informally asked Burch to participate in arbitration, but when Heatron and ECM would not or could not produce a signed copy of the 2012 Agreement, which Burch disputed applied to the present disputes in any case, Burch refused to participate in arbitration.

4

On July 16, 2015, the parties and the district court engaged in a case management conference hearing, which resulted in the case management conference order. That order set the close of discovery for January 22, 2016; set the pretrial motions filing deadline for February 5, 2016; set the pretrial motions hearing and pretrial conference for March 31, 2016; and set trial for May 23, 2016.

The parties conducted discovery and, in November 2015, Heatron discovered what appeared to be a photocopy of the 2012 Agreement with Burch's signature. At his deposition in January 2016, Burch contested the authenticity of his purported signature on the photocopy produced by Heatron. Experts retained by the parties all agreed that the signature on the document was not authentic.

The parties continued with discovery and, on January 22, 2016, they filed a joint motion for extension of the discovery deadline, the pretrial motion deadline, and the expert witness designation deadline because of the large volume of discovery already produced. The parties indicated in the joint motion that they did not expect that the trial date would need to be delayed. On February 26, 2016, Heatron filed an independent motion seeking to file pretrial motions despite it being past the deadline on which such motions needed to be filed. The district court denied Heatron's motion.

In early June 2016, Heatron's offices flooded, requiring Turner to move offices. While moving, Turner discovered a copy of the 2012 Agreement with Burch's original signature. The same day, Heatron produced the document to Burch, but Burch informed Heatron on July 14, 2016, that he would not stipulate to its authenticity. On July 25, 2016, Heatron supplemented its pretrial questionnaire purporting to add to its list of trial exhibits and to identify an expert witness who would testify to the document's authenticity. Burch filed objections, arguing that the expert disclosure was untimely.

5

On August 26, 2016, the district court issued its pretrial order. The pretrial order did not address Heatron's request to supplement its expert witness list and its trial exhibit list, but it set trial for September 19, 2016.

On September 7, 2016, Heatron moved to compel arbitration and stay the civil proceedings. Heatron argued that the arbitration provision in the 2012 Agreement encompassed all of Burch's claims and that the timing of the motion to compel arbitration "was based on a misplaced arbitration agreement and not based on litigation tactics or improper motive." ECM joined the motion on September 8, 2016. Burch filed a memorandum in opposition to the motion to compel arbitration.

On September 12, 2016, the district court held a hearing on the motion. At the hearing, Heatron argued that the arbitration provision in the 2012 Agreement controlled Burch's claims and that they now had the original signed agreement. Heatron noted that it had asserted in its answer that the arbitration provision of the 2012 Agreement controlled. Heatron also informed the district court that it had informally suggested arbitration early in the litigation, but that Burch would not agree to arbitration. Heatron conceded that it could have moved to compel arbitration when the case was initially filed but stated that it had not done so because it did not believe it had the proof necessary to show arbitrability of the claims until discovery of the original 2012 Agreement in May 2016.

For his part, Burch argued first that his claims were not encompassed by the 2012 Agreement because he only sought damages for bonuses unpaid after fiscal year 2012, while the 2012 Agreement, by its terms, applied only to fiscal year 2012. Burch explained that although the initial alleged oral agreement with Turner about multiyear bonuses on RJR revenue was purportedly made during fiscal year 2012, he based his current claims on subsequent promises that Turner allegedly made after the 2012 fiscal year. Burch also argued that to the extent the 2012 Agreement did apply, Heatron had waived its right to arbitration through its litigation conduct. Even so, Burch conceded at

6

the hearing that waiver and timeliness were issues that should be decided by arbitrators if the underlying claims were within the scope of the arbitration agreement.

After hearing argument, the district court ruled from the bench. The district court set forth the basic facts of the case, including the relevant language from the 2012 Agreement, then stated:

"4. This Court's review of the present motion is limited to whether the claims in this lawsuit are arbitrable. The issues related to waiver, timing, and other procedural matters of arbitration rights, are to be [decided] by the arbitrators. And that's from [*Portfolio Recovery Assocs. v. Dixon*, 52 Kan. App. 2d 365, 366 P.3d 245 (2016)], . . . which is also supported by certain other decisions that have been shown to me, including the *BG Group*[*, PLC*] *v. Republic of Argentina*[, 572 U.S. 25, 134 S. Ct. 1198, 188 L. Ed. 2d 220 (2014),]. . . . And, also, the *City of Lenexa v. C.L. Fairley* [*Constr. Co., Inc.*, 15 Kan. App. 2d 207, 805 P.2d 507, *rev. denied* 248 Kan. 994 (1991)].

"5. The agreement Defendant bases its motion to compel arbitration on was signed on February 27, 2012. It is purported to be signed on February 27, 2012. And by its terms, ["]was effective between October 1, 2011 and September 31 [*sic*], 2012[."] Some, but not all, of Plaintiff's claims relate to ["]disputes["] ["]which arise out of Plaintiff's employment["] during the effective time of agreement.

"6. . . . Plaintiff's claims are based on a June 6, 2012 oral agreement that was reaffirmed periodically after the time of the effective date of the written agreement. The alleged oral promise or agreement on June 6, 2012, would have been during the effective timeframe of the written agreement that included the arbitration provision. It is a dispute which arose out of his employment. Accordingly, it would be arbitrable."

The district court also briefly addressed the issues of timeliness and waiver, although it expressly noted that "to the extent that these are matters that are for the arbitrators, then obviously any of my findings are—are not effective." The district court granted the motion to compel arbitration and stayed the civil proceedings pending arbitration of all of Burch's claims.

A panel of three arbitrators was selected, and on November 23, 2016, Burch filed a motion with the arbitration panel seeking remand to the district court because Heatron and ECM waived their right to arbitration and/or did not timely seek arbitration. Heatron filed an opposition to the motion, which ECM joined, on December 7, 2016. On December 16, 2016, Burch filed his reply in support of the motion.

In a written order issued on December 21, 2016, the arbitration panel denied Burch's motion to remand. Noting that the case "presents close questions" about waiver and timeliness, the arbitration panel nevertheless found that Heatron and ECM notified Burch of their intent to arbitrate within the one-year timeframe set forth in the 2012 Agreement and that they had not waived their right to arbitrate through their litigation conduct, as they moved to compel arbitration within a reasonable period after the May 2016 discovery of the 2012 Agreement with Burch's original signature.

The arbitration panel held an evidentiary hearing on Burch's claims on June 13-16, 2017. On October 17, 2017, the arbitration panel issued its written order unanimously finding in favor of Heatron and ECM and against Burch on all claims. As to the breach of oral contract claim, the arbitrators found "that Burch failed to meet his burden of proving that Heatron promised him that he would continually receive a 2% commission on all RJR business or any other 'new business' which, after the first year, was no longer 'new business' to the company." The arbitrators also found that Burch failed to meet his burden of proving his claims under promissory estoppel and quantum meruit.

On October 23, 2017, Heatron filed in the district court a motion to confirm the arbitration award, which ECM joined. On November 30, 2017, Burch moved to vacate the award.

On January 23, 2018, the district court held a hearing on the motions. Burch argued for the first time that waiver of the right to arbitration is a question for the district

8

court, not the arbitration panel; he then reasserted his argument that Heatron and ECM's litigation conduct waived any right to arbitration. He also reasserted that his claims were not within the scope of the arbitration provision because the 2012 Agreement covered only fiscal year 2012 and he sought damages for fiscal years 2013 and 2014. Finally, Burch argued that the arbitrators manifestly disregarded Kansas law on quantum meruit, in that they misunderstood and misapplied the test for quantum meruit.

For its part, Heatron reasserted its positions that waiver was an issue for the arbitrators and that Burch's claims were within the scope of the arbitration provision in the 2012 Agreement because they stemmed from an oral contract that allegedly occurred in June 2012. Heatron disputed the other arguments made by Burch and asserted that the arbitrators' decision should be upheld in its entirety. ECM did not present oral argument at the hearing. The district court ruled from the bench:

> "[B]ased on the argument and briefing that the parties have done, the Court is granting the motion to confirm the arbitration award and denying the motion to vacate the arbitration award.
>
> "The Court finds that the matters addressed were all determined by the arbitrator[s] against the plaintiff's positions, that the opportunity to present and determine the waiver issues were given to the arbitrators, considered and determined adverse to the plaintiff.
>
> "The Court would indicate, also, that even if—and the reason I'm making this is for the potential that if I'm wrong about litigation waiver is a matter for the arbitrators to decide, that even if I were to determine the issue of litigation waiver at this time I would find that there was no such waiver. And—and the principle difference would be that the late determination of the existence of a signed agreement which compelled or provided for arbitration explains to my satisfaction the delay in asserting that position, and that although it was late in the process and as [Burch] has indicated but for scheduling issues the case could have been tried in—in May of 2016 before the discovery and—and the assertion of the motion to compel arbitration, but that—that that explains and distinguishes it from the other cases where litigation waiver has been determined by the Court as opposed to the arbitrators. So even if that matter was left for my determination, I

would not find that there was a waiver of—of the litigation—or a waiver of the right to arbitrate.

"The Court finds, also, contrary to what Plaintiff argues, that the claims that were submitted and determined by the arbitrators were arbitrable claims. They did not exceed the scope of the arbitration agreement. The Court finds that the arbitrators did not exceed the authority that they were granted in making the determination of the issues in the—in the matter.

"And also the Court finds that the arbitrators did not decide contrary to Kansas law the issue of *quantum meruit* and apply a[n] incorrect legal standard for a determination. The statement that [Burch] has indicated from page 10 of their—their order cannot be looked at in isolation, you have to look at the opinion as a whole. And they spend the better part of page 8 of the Opinion discussing the *quantum meruit* claim, the elements that are required of proof, and what their findings were in relation to that.

"And it is clear from my reading of that, that they did not take the position that we're not even considering *quantum meruit* because we found that there was not an oral agreement and without such an agreement there can be no *quantum meruit* claim. That was not in my judgment what the arbitrators found.

"So for those reasons as well as I've been persuaded by more extensively the briefing that was done by the defendant on—on—on the particular issues raised by the plaintiff in their motion to vacate the arbitration award, that the defendants' motion to confirm the award should be granted."

On January 25, 2018, the district court issued its journal entry granting the motion to confirm the arbitration award and denying the motion to vacate it "[f]or the reasons stated on the record." Burch timely filed a notice of appeal.

On appeal, Burch asserts that the district court erred both before and after ordering the arbitration. First, he argues that the district court erred prior to the arbitration by finding that Burch's claims were arbitrable and by leaving the timeliness and waiver issues for the arbitrators to decide. Second, he argues that the district court erred after the arbitration by declining to vacate the arbitration award despite the arbitration panel's error

10

in applying the Federal Arbitration Act instead of the Kansas Uniform Arbitration Act and the panel's error in manifestly disregarding Kansas law on quantum meruit claims.

DID THE DISTRICT COURT ERR BY ORDERING ARBITRATION?

Burch argues that the district court erred by ordering arbitration because (1) the arbitration provision did not apply to his claims, which were based on the alleged oral agreement with Turner; (2) the demand for arbitration was untimely; and (3) Heatron and ECM waived arbitration, which should have been considered by the district court, not the arbitrators. Heatron and ECM reply that the district court correctly found that (1) Burch's claims fell within the scope of the arbitration provision; (2) whether the arbitration demand was timely and whether arbitration was waived were matters properly left to the arbitrators; (3) the arbitration demand was timely; and (4) arbitration was not waived.

*Arbitrability of Burch's claims*

> "An arbitrator's power to resolve a dispute originates from an agreement to arbitrate between the parties. Without such an agreement to establish the parties' consent, the arbitrator has no jurisdiction. When deciding whether to compel arbitration, a court must first consider whether there is an agreement to arbitrate between the parties. If there is such an agreement, the court must then determine whether the arbitration agreement includes the specific point at issue. An appellate court reviews an alleged arbitration agreement like any other contract, applying a de novo standard of review. [Citations omitted.]" *Anderson v. Dillard's, Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007).

The parties do not dispute whether there was an agreement to arbitrate; instead, they focus on whether the arbitration agreement encompasses Burch's claims. Burch contends that his claims were not within the scope of the arbitration clause in the 2012 Agreement because the claims are not based on the 2012 Agreement itself but on Burch's alleged oral contracts with Turner. Specifically, Burch points to the oral promises Turner

11

allegedly made to Burch after fiscal year 2012 to continue paying the 2 percent bonus on RJR business. Burch contends that because the purported renewed promises for bonuses occurred after fiscal year 2012, they are not covered by the 2012 Agreement and thus Burch's claims are not subject to the arbitration provision in the 2012 Agreement.

Burch's argument hinges on the persuasiveness of his assertion that the oral promises allegedly made by Turner after fiscal year 2012 to continue paying Burch a 2 percent bonus on RJR business are distinct from the promise to do so that Turner allegedly made during fiscal year 2012. Burch raised this argument at the September 12, 2016 hearing on the motion to compel arbitration, and at the January 23, 2018 hearing on the motion to confirm or vacate the arbitration award. The district court rejected it both times, finding that the alleged June 6, 2012 oral agreement was the genesis of the present disputes and all later agreements between Turner and Burch were "reaffirmations" of that agreement. Burch now claims that this finding by the district court was error.

To support his claim, Burch cites *DynaResource de Mexico, S.A. de C.V. v. Goldgroup Resources, Inc.*, No. 14-cv-01527-MSK-KMT, 2015 WL 13730675 (D. Colo. 2015) (unpublished opinion), *report and recommendation rejected by* 2015 WL 5693560 (2015) (hereinafter referred to as "*DynaResource*"). This case involved a dispute over performance under an option agreement entered into in 2006 by two companies, Goldgroup and Dyna Mexico. Under the option agreement, which contained a mandatory arbitration provision, Goldgroup could obtain an equity stake in Dyna Mexico in exchange for capital contributions to Dyna Mexico. In 2011, Goldgroup exercised the option and obtained 50 percent equity in Dyna Mexico. 2015 WL 5693560, at *1. In 2014, Goldgroup filed a demand for arbitration, claiming that Dyna Mexico had improperly issued additional shares of its stock, diluting GoldGroup's equity stake in Dyna Mexico. Dyna Mexico sued in Colorado federal district court—the chosen venue in the option agreement's arbitration provision—and it argued that the option agreement

12

expired in 2011 when GoldGroup exercised its option, so neither the option agreement nor the arbitration provision therein remained operative. 2015 WL 5693560, at *1.

Burch cites *DynaResource* to support his claim that arbitration provisions are no longer binding after the expiration of the relevant agreement. There are several problems with Burch's argument. First, Burch does not acknowledge that the opinion issued in *DynaResource* on the date he cites (August 27, 2015) was a report and recommendation from a United States magistrate judge that ultimately was rejected by a United States district court judge. Second, the language Burch quotes is not found in the case he cites, but in the United States district judge's order, issued on September 29, 2015.

Moreover, when read in full, *DynaResource* is materially distinguishable. The Colorado United States District Court did state that if the option agreement containing the arbitration provision "has unambiguously expired, the parties' agreement to arbitrate would no longer be valid." 2015 WL 5693560, at *7. But the federal court went on to find that because some of the provisions of the option agreement "impose obligations on the parties that seemingly continue indefinitely" and the option agreement contained no express provision setting a termination date, the option agreement "remains in effect in some respects, and thus, the parties' agreement to arbitrate disputes" remained operative as well. 2015 WL 5693560, at *7. Unlike *DynaResource*, this case depends on whether an arbitration provision in a written employment contract governs both an oral agreement made within the express timeframe of the employment agreement *and* later renewals of that oral agreement made after the timeframe of the employment agreement.

Burch also cites *Heidebrecht v. Letterese*, No. 90,522, 2004 WL 944251 (Kan. App. 2004) (unpublished opinion). In *Heidebrecht*, the parties entered into a written contract agreeing that the defendant would provide management and/or mentoring services in exchange for payment from the plaintiff. The contract included a mandatory arbitration provision stating that "'[i]f a dispute arises under this contract,'" the parties

13

agreed to arbitration. 2004 WL 944251, at *3. The contract also stated that the "'remedies prescribed within this contract' were to be used to resolve '*any and all future disagreements that may arise between the parties.*'" 2004 WL 944251, at *3. The plaintiff and defendant later entered into an oral agreement under which the defendant agreed to provide self-defense training for the plaintiff's staff in exchange for monetary payment. After paying the defendant, however, the plaintiff changed his mind and asked for a refund, which the defendant did not provide.

The plaintiff later sued for breach of contract of the oral agreement, and the defendant moved for arbitration under the written contract; the district court denied the motion. On appeal, this court noted that the arbitration provision of the written contract "clearly refers to a dispute that 'arises under this contract,'" so the pivotal question was whether the oral agreement arose under the written contract. 2004 WL 944251, at *3. This court held that the written contract's terms were not ambiguous and did not provide for the type of training agreed to in the oral agreement, so the oral agreement did not arise from the written contract and was not subject to the arbitration clause therein. 2004 WL 944251, at *4.

Burch argues that, as in *Heidebrecht*, the post-2012 fiscal year oral agreements on which he bases his current claims relate to "different services" than those in the 2012 Agreement. But Burch does not explain how the oral agreements allegedly made after fiscal year 2012 relate to different services than those at issue in the 2012 *oral* agreement he purportedly entered into with Turner. Indeed, all the alleged oral agreements with Turner related to the bonuses Burch would receive on multiyear business with RJR, which materially distinguishes this case from the circumstances in *Heidebrecht*. In any event, this court need not go beyond the plain language of the 2012 agreement to resolve the arbitrability dispute.

14

"It is well established that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [that party] has not agreed so to submit.'" *Portfolio Recovery Assocs. v. Dixon*, 52 Kan. App. 2d 365, 369, 366 P.3d 245 (2016). If the terms of a contract including an arbitration provision are clear, the court shall determine the parties' intent from the plain language of the contract. *Anderson*, 283 Kan. at 436. If there are doubts about whether an issue falls within an arbitration agreement, however, those doubts should be resolved in favor of arbitration. *Portfolio Recovery Assocs.*, 52 Kan. App. 2d at 370. Even "when interpreting provisions that determine the scope of the arbitration agreement, normal state-law canons of contract construction—such as construing ambiguous provisions against the party that drafted it—generally are trumped by the . . . policy in favor of arbitration." *Hague v. Hallmark Cards, Inc.*, 48 Kan. App. 2d 118, 121, 284 P.3d 369 (2012).

The plain language of the arbitration clause in the 2012 Agreement is very broad and applies to "[a]ll disputes . . . which arise out of the participant's employment or termination thereof," even if the claims were not "based exclusively on the terms of" the 2012 Agreement. The 2012 Agreement set forth Burch's compensation plan with Heatron. Burch's initial alleged oral agreement with Turner occurred on June 6, 2012, during the same fiscal year covered by the written agreement, and addressed the same subject matter as the written agreement, i.e., the bonus compensation Burch was entitled to receive from Heatron for the business he brought to the company. As the district court found, the later alleged oral agreements between Turner and Burch were only a reaffirmation of the June 6, 2012 agreement. All of Burch's claims in his civil lawsuit, whether based on the written agreement between the parties or alleged oral modifications, are disputes arising out of his employment with Heatron and are subject to the broad language of the arbitration clause in the 2012 Agreement.

In sum, the arbitration clause in the 2012 Agreement applies to disputes arising from the written agreement between the parties as well as the alleged oral agreement on

15

June 6, 2012, along with all later renewals of that oral agreement. Based on the plain language of the arbitration agreement, and given the strong policy in favor of allowing arbitration when parties have agreed to submit to arbitration, we conclude the district court did not err in finding that the claims in Burch's civil litigation fell within the scope of the arbitration provision of the 2012 Agreement.

*Timeliness*

As stated above, the 2012 Agreement's arbitration clause provided: "Neither party may demand arbitration or institute any lawsuit in any form arising out [of] this Plan, or arising in any way out of the employment relationship between the parties, more than one (1) year after the claim or cause of action has arisen." Burch argues that the district court "erred in finding Defendants demanded arbitration within one year of Plaintiff's lawsuit." We reject Burch's claim on the issue of timeliness for multiple reasons.

First, Burch may not challenge whether the district court erred by deciding that the arbitration was timely under the 2012 Agreement because the district court did not make such a finding. Although the district court did address the timeliness issue when it ruled from the bench at the hearing on Heatron's motion to compel arbitration, it did so only in an advisory manner. At the September 12, 2016 hearing on Heatron's motion to compel arbitration, the district court found that timeliness was a matter for the arbitrators, not the court. The district court did discuss whether it would find the arbitration was barred as untimely if the decision were before it, but it then stated: "[T]o the extent that these are matters for the arbitrators, then obviously any of my findings are—are not effective." Thus, to the extent that Burch argues that the district court erred by finding on the merits that the arbitration was timely sought, that argument fails.

Second, Burch is likely judicially estopped from making the argument he does on appeal because he did not initially argue that timeliness was an issue for the court instead

16

of the arbitrators. "Judicial estoppel precludes a party from taking one position in a case to induce the court to act in a certain way and then taking a contrary or conflicting position in a related proceeding involving the same opposing parties." *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 262, 261 P.3d 943 (2011). At the September 12, 2016 hearing, Burch agreed that timeliness was an issue for the arbitrators to decide. In particular, Burch stated that "I think the issue of timeliness, like I said, can be for the arbitrator on the one-year bar." Later in the hearing, Burch referred to timeliness and waiver as "threshold issues that go to [the] arbitrator[s]."

Finally, the record reflects that, as anticipated at the September 12, 2016 hearing in the district court, Burch raised the issue of timeliness to the arbitration panel, and he did not contend that timeliness should be decided by the district court. The arbitration panel rejected the argument, finding that Heatron and ECM notified Burch of their intent to arbitrate within the one-year timeframe of the 2012 Agreement. Burch does not argue anywhere in his appellate brief that the *arbitration panel* erred in this decision. "Where the appellant fails to brief an issue, that issue is waived or abandoned." *In re Adoption of T.M.M.H.*, 307 Kan. 902, Syl. ¶ 6, 416 P.3d 999 (2018). Because Burch has failed to brief the propriety of the arbitration panel's decision on timeliness—the only decision on the merits of timeliness—the propriety of that decision is not properly before this court.

*Litigation-conduct waiver*

Burch also contends that the district court erred by leaving to the arbitration panel whether Heatron and ECM had waived their right to arbitrate through their litigation conduct. Burch argues that the district court should have determined waiver itself and that, had it done so, it would have found that Heatron and ECM waived any right to arbitration. Although Burch devotes much of his appellate brief to arguing that Heatron and ECM waived their right to arbitration, this argument suffers from some fundamental problems like those that undermine his timeliness argument.

17

First, at the September 12, 2016 hearing on Heatron's motion to compel arbitration, Burch agreed that "the majority rule is that waiver is an issue for the arbitrators." Thus, it is at best questionable whether Burch was judicially estopped from later arguing the opposite or, at least, whether he invited the alleged error of which he now complains.

However, unlike his timeliness argument, Burch did at least argue to the district court that it, and not the arbitration panel, should decide the waiver issue. But he did so, for the first time, at the post-arbitration hearing on the motions to vacate or confirm the arbitration award. This court has held that if a party participates in an arbitration hearing without raising an objection, it may not raise an issue for the first time, post-arbitration, in a motion to vacate an adverse arbitration award. See *MBNA America Bank, N.A. v. Barben*, No. 92,085, 2005 WL 1214244, at *5 (Kan. App. 2005) (unpublished opinion) ("If a party *does* participate in the arbitration hearing *without* raising the objection, the party cannot raise the issue for the first time in an application to vacate the award.").

In any event, Burch's argument that the district court erred in determining that waiver was an issue for the arbitrators fails on the merits. As Heatron and EMC point out, this argument was addressed and rejected in *Portfolio Recovery Associates*:

> "[I]n [*BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 134 S. Ct. 1198, 188 L. Ed. 2d 220 (2014)], as already discussed, the United States Supreme Court reiterated, without carving out an exception for questions related to litigation conduct, that courts presume procedural issues related to waiver-of-arbitration are to be decided through arbitration. Given that the United States Supreme Court has reaffirmed the more general rule without specifically following the circuits cited by [the defendant], we are compelled to follow *BG Group*. Working under the assumption that the arbitration agreement is both binding on the parties and intended for waiver-of-arbitration issues to be decided through arbitration, we find that the issue of whether [the plaintiff's] litigation conduct constitutes a waiver of its right to arbitrate [the defendant's] counterclaims must be decided by an arbitrator. [Citations omitted.]" 52 Kan. App. 2d at 372.

18

Burch cites several cases to support his argument that this court erred in *Portfolio Recovery Associates*. Some of those cases were decided before *BG Group* and, as such, are not persuasive. See *Hill v. Ricoh Americas Corp.*, 603 F.3d 766 (10th Cir. 2010); *Funderburke v. Midland Funding, L.L.C.*, No. 12-2221-JAR/DJW, 2013 WL 394198 (D. Kan. 2013) (unpublished opinion); *Kendall State Bank v. West Point Underwriters, LLC*, No. 10-2319-JTM/KGG, 2013 WL 593957 (D. Kan. 2013) (unpublished opinion). Others, although issued post-*BG Group*, do not mention *BG Group* at all and simply decide litigation-conduct waiver without addressing whether the question should be decided by courts or by arbitrators. See *BOSC, Inc. v. Board of County Commissioners of County of Bernalillo*, 853 F.3d 1165, 1174-75 (10th Cir. 2017); *In re Cox Enterprises, Inc.*, 835 F.3d 1195, 1205-09 (10th Cir. 2016); *Martin v. Yasuda*, 829 F.3d 1118, 1124-26 (9th Cir. 2016); *Renteria-Camacho v. DirecTV, Inc.*, 175 F. Supp. 3d 1308, 1311-13 (D. Kan. 2016); *City of Udall, Kan. v. Poe & Associates*, No. 13-1314-KHV, 2014 WL 3427297, at *3-5 (D. Kan. 2014) (unpublished opinion); *First National Bank of Omaha v. Price*, No. 111,062, 2014 WL 6777441 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1009 (2015).

The only case Burch cites that directly addresses *BG Group*'s effect on who should decide issues of litigation-conduct waiver of arbitration is an unpublished opinion from the Fifth Circuit. In *Vine v. PLS Financial Services, Inc.*, 689 Fed. Appx. 800, 802-03 (5th Cir. 2017) (unpublished opinion), the Fifth Circuit Court of Appeals addressed the argument that *BG Group* abrogated its previous decisions recognizing that a court, not an arbitrator, "is in the best position to decide whether the [litigation] conduct amounts to a waiver under applicable law." 689 Fed. Appx. at 802. The Fifth Circuit rejected the argument:  "Despite the surface appeal of this argument, a careful reading of *BG Group* and [*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002), a case which also stated that claims "'of waiver, delay, or a like defense to arbitrability'" should be decided by arbitrators,] demonstrates that it is misguided." *Vine*, 689 Fed. Appx. at 803. Citing pre-*BG Group* Fifth Circuit precedent and noting that pre-

19

*BG Group* federal caselaw indicated the majority rule across circuits was that courts should presumptively decide litigation-conduct waiver, the Fifth Circuit concluded: "We note that a majority of the decisions addressing litigation-conduct waiver pre-date *BG Group*, but the logic of those decisions interpreting *Howsam* is equally applicable to *BG Group*. Consequently, the district court did not err [in deciding the waiver issue]." 689 Fed. Appx. at 803.

While *Vine* may be persuasive authority, it is largely based on pre-*BG Group* Fifth Circuit precedent and is not binding on this court. The holding in *Portfolio Recovery Associates*, while also not binding, is more in line with the apparent intent of *BG Group*. The United States Supreme Court stated:

> "[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. These procedural matters include claims of 'waiver, delay, or a like defense to arbitrability.' And they include the satisfaction of '"prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate."'" *BG Group, PLC*, 572 U.S. at 34-35.

Contrary to Burch's argument and the conclusion of the Fifth Circuit in *Vine*, the language in *BG Group* does not limit arbitrators' consideration of "procedural matters" to those that do not particularly implicate the judicial process. In essence, the issue of litigation-conduct waiver is one that considers "delay," which is specifically noted in *BG Group* as a procedural matter presumptively left for arbitrators to decide. Similarly, "[l]aches is the neglect or omission to assert a right that, taken in conjunction with lapse of time and other circumstances, causes prejudice to an adverse party." *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 389, 22 P.3d 124 (2001). An analysis of whether laches applies to bar arbitration could include litigation conduct and is explicitly noted by *BG Group* as a procedural matter presumptively left to arbitrators.

20

Based on the reasoned analysis in *Portfolio Recovery Associates,* the lack of binding precedent to the contrary, and the Supreme Court's holding in *BG Group*, we conclude the district court did not err in holding that the matter of litigation-conduct waiver should be determined by the arbitrators. As a result of this conclusion, we need not address the district court's alternative finding that even if it had decided the litigation-conduct issue, it would have found that Heatron and ECM did not waive their right to arbitration through their litigation conduct.

## DID THE DISTRICT COURT ERR BY DECLINING TO VACATE THE ARBITRATOR'S AWARD?

"Once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of upholding the award. Kansas courts must exercise immense caution when asked to vacate an arbitration award. Because a focal purpose of arbitration agreements is to avoid the expense and delay of court proceedings, judicial review of an arbitration award is very narrowly limited. [Citation omitted.]" *Heartland Surgical Specialty Hospital v. Reed*, 48 Kan. App. 2d 237, 244, 287 P.3d 933 (2012).

"An appellate court must affirm an arbitration award as long as the arbitrator[s] acted within the scope of [their] authority, and is bound by [the] arbitrator[s'] findings of fact and conclusions of law unless an error was made in bad faith or amounts to affirmative misconduct." *Unified Gov't of Wyandotte County/KCK v. IBEW Local 53*, 48 Kan. App. 2d 128, 132-33, 286 P.3d 570 (2012).

Burch argues that the district court erred by denying his motion to vacate the arbitration award because (1) the Kansas Uniform Arbitration Act (KUAA) governed the arbitration, and it does not permit arbitration of employment disputes; and, in the alternative, (2) if the Federal Arbitration Act (FAA) applies, the arbitrators manifestly disregarded Kansas law on quantum meruit. Heatron and ECM reply that (1) the FAA preempts the KUAA's ban on arbitration of employment disputes, and (2) the arbitrators did not manifestly disregard Kansas law on quantum meruit.

21

*Which arbitration act controls*

Burch argues that the version of the KUAA which was in effect at all times relevant to this case but was repealed effective July 1, 2018, did not permit arbitration of employment disputes. K.S.A. 5-401 stated:

"(b) Except as provided in subsection (c), a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract.

"(c) The provisions of subsection (b) shall not apply to: . . . (2) contracts between an employer and employees."

Under this language, Burch contends, the arbitration provision in the 2012 Agreement is not valid or enforceable. As a threshold issue, Heatron and ECM contend that Burch has not preserved this issue for appeal.

In his motion to vacate the arbitration award, Burch argued that the KUAA prevented the arbitration of this employment dispute. But before the arbitration, at the hearing on Heatron's motion to compel arbitration, Burch's counsel explicitly stated:

"I'm not arguing that the FAA doesn't apply, I think it does. Even though they specifically and expressly mention the Kansas Uniform Arbitration Act, I think the FAA applies. I don't think I can argue interstate commerce is not involved, even though I have a Kansas employee who lives in Kansas who's dealing with Kansas companies. I can make that argument, but I think ultimately what will be decided is he's dealing with interstate commerce."

Burch's counsel affirmatively stated that he believed the FAA applied to this case. At the very least, he did not object to the application of the FAA and thus could not raise the argument for the first time in his motion to vacate the arbitration award. See *MBNA*

*America Bank, N.A.*, 2005 WL 1214244, at *5 ("If a party *does* participate in the arbitration hearing *without* raising the objection, the party cannot raise the issue for the first time in an application to vacate the award.").

In any event, Burch's argument that the KUAA bars arbitration of employment disputes that would otherwise be arbitrable under the FAA has been rejected in Kansas. See *Portfolio Recovery Assocs.*, 52 Kan. App. 2d at 370 ("[T]his court has recognized that the FAA preempts state law concerning the enforcement of arbitration agreements involving interstate commerce."). Similarly, the Kansas Supreme Court has held that where the KUAA's prohibition of arbitration of tort claims conflicts with the FAA, the KUAA is preempted. See *Skewes v. Shearson Lehman Bros.*, 250 Kan. 574, 581, 829 P.2d 874 (1992) ("[T]he FAA preempts conflicting state law which exempts enforcement of arbitration agreements involving interstate commerce."). Burch does not argue that the 2012 Agreement did not involve interstate commerce. Thus, to the extent that the KUAA prohibits arbitration of employment disputes, the FAA preempts that prohibition when, as here, the contract containing the arbitration provision involves interstate commerce.

*Did the arbitrators manifestly disregard Kansas law?*

Finally, Burch contends that the district court should have vacated the arbitration award because the arbitration panel manifestly disregarded Kansas law on quantum meruit. Burch raised this argument before the district court at the January 23, 2018 hearing, and the district court rejected it; thus it is properly before this court.

This court has held that even given the narrow scope of review of an arbitration award, courts may vacate an arbitration award "when there is a 'manifest disregard' of Kansas law by the arbitrator. . . . [M]anifest disregard of the law occurs when an arbitrator knows of a governing legal principle but refuses to apply it." *Neighbors*

23

*Construction Co. v. Woodland Park at Soldier Creek*, 48 Kan. App. 2d 33, 43, 284 P.3d 1057 (2012). The relevant portion of the arbitration award is as follows:

"Burch argues that even if there was no enforceable promise by Heatron to pay him a 2% commission on all RJR or Ametek sales, equitable principles (i.e., quantum meruit) demand that he be paid more than he received because of his contribution bringing those projects (and revenue) to the company. Kansas law is clear that '[u]njust enrichment/quantum meruit is an equitable doctrine. . . . The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to that person.' *University of Kansas Hosp.* [*Auth. v. Board of Wabaunsee County Comm'rs*], 299 Kan. 942, 960, 327 P.3d 430, 441 (2014) (quoting *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, Syl. ¶ 5, 910 P.2d 839 (1996)). To establish an unjust enrichment claim, 'a plaintiff must establish (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated and has [*sic*] knowledge of the benefit; and (3) the defendant accepted and retained the benefit under circumstances that make the retention unjust.' *Id.* (citing *Nelson v. Nelson*, 288 Kan. 570, 580, 205 P.3d 715 (2009); *Haz-Mat Response, Inc.*, 259 Kan. 166, Syl. ¶ 6, 910 P.2d 839.)

"Without reaching the question of whether Burch conferred a benefit on Heatron or ECM which was appreciated by those companies, we do not find that the circumstances presented here mandate imposing an equitable remedy to require either company to pay Burch more than he was already paid by Heatron. Burch's sales efforts played an important part of Heatron's success, and it is unlikely that ECM would have been presented with its opportunity to do business with RJR but for Burch's involvement. However, to impose upon an employer an obligation to pay an employee more than they agreed upon as part of the employee's bargained-for employment terms would open the door for any other employee who played an important role in the companies' success to claim that they too should be paid more than what they received. For example, but for Heatron's engineering department, the companies would not have been successful in generating the revenue from [RJR]. It would be unfair to find that Burch's contribution to the companies' success could be differentiated from other employees' contributions, and it would be equally unfair to reward Burch for his contribution to the projects beyond the lucrative payments he has already received from Heatron. Accordingly, we decline to

24

create an equitable remedy here in the absence of evidence showing that Heatron breached an agreement to pay Burch what he is due. Put simply, we find that a salaried employee has no claim to compel his employer to pay him a bonus absent a contractual obligation to do so; nor is the employer unjustly enriched when it fails to pay such a commission."

Here, the arbitrators did not manifestly disregard Kansas law on quantum meruit. Instead, the arbitration panel expressly set forth the three elements necessary to establish an unjust enrichment claim under Kansas law. The third element is that the defendant accepted and retained a benefit under circumstances that make the retention unjust. After quoting the applicable law, the arbitration panel simply found under the circumstances of this case that it would be "unfair to find that Burch's contribution to the companies' success could be differentiated from other employees' contributions, and it would be equally unfair to reward Burch for his contribution to the projects beyond the lucrative payments he has already received from Heatron."

Burch points to the final portion of the above-quoted language in the award and argues that the arbitration panel held that no employee can ever bring a quantum meruit claim without first establishing a contract with the employer. Burch argues that such an interpretation defeats the purpose of bringing an extra-contractual quantum meruit claim. The district court rejected that argument and found that the arbitrator's opinion must be considered as a whole without focusing on any single statement in isolation. The district court noted that the arbitration panel spent "the better part of page 8 of the Opinion discussing the *quantum meruit* claim, the elements that are required of proof, and what their findings were in relation to [those elements]." The district court found that the arbitration panel was not taking the position that no employee can ever bring a quantum meruit claim for wages or bonuses without first establishing a contract with the employer, stating: "That was not in my judgment what the arbitrators found."

We agree with the district court. Although the final portion of the arbitration award may have been unartfully drafted, the language conflicts with the remainder of the

25

analysis in the opinion and should not be considered in isolation. The arbitration panel essentially found that Burch failed to meet his burden of proving any of his claims. As to the quantum meruit claim, the arbitration panel expressly set forth the three elements necessary to establish an unjust enrichment claim in Kansas, quoting from applicable Kansas Supreme Court decisions. The arbitrators found under the circumstances of the case that Burch failed to establish the third element of an unjust enrichment claim under Kansas law. We reject Burch's claim that the arbitrators manifestly disregarded Kansas law on quantum meruit. As a result, we conclude the district court did not err by declining to vacate the arbitrator's award.

Affirmed.